**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER

and

MARC FIEDLER,
                    Plaintiffs,

        *v.*

HILTON HOTELS CORPORATION,
                    Defendant.

Civ. Action No. 1:07-cv-01528-JR

**MOTION TO DISMISS OF DEFENDANT HILTON HOTELS CORPORATION**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7) and

Local Civil Rule 7, Defendant Hilton Hotels Corporation ("Hilton") moves to dismiss the

Complaint with prejudice.  As set forth in the accompanying Memorandum of Points and

Authorities in Support of Hilton's Motion to Dismiss, Plaintiffs have not demonstrated

that they have standing to bring this lawsuit which seeks nationwide injunctive relief for

as many as 2854 hotels.  In addition, even though Plaintiffs seek injunctive relief that

could result in costly physical alterations at thousands of hotels across the country, they

have failed to name the owners of such properties as parties to this action.  These owners

are indispensable parties without which the lawsuit cannot proceed, but this Court does

not have personal jurisdiction over most of them.  Finally, Plaintiffs' claims against

hotels constructed before 1993 that allegedly do not have accessible rooms dispersed

across different room categories must be dismissed under Federal Rule of Civil Procedure

12(b)(6) because the ADA does not require such dispersal as a matter of law.

Respectfully submitted,


EPSTEIN BECKER & GREEN, P.C.


_____/s/_____Minh N. Vu__
Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)


Lisa A. Krupica (not admitted in D.C.)
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)


DATED:  April 3, 2008                    Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Motion to Dismiss was served this 3rd day of April 2008, by electronic service, on the following:

> Elaine E. Gardner, Esq.
> Washington Lawyers' Committee for
> Civil Rights & Urban Affairs
> 11 Dupont Circle, NW, Suite 400
> Washington, D.C.  20036
>
> Attorney for Plaintiffs

A courtesy copy was served by regular mail on:

> August Matteis, Jr.
> Benjamin Davidson
> Gilbert Randolph LLP
> 1100 New York Avenue, NW
> Suite 700
> Washington, DC 20005
>
>
> Attorneys for Plaintiffs


_____/s/_____
Minh N. Vu
D.C. Bar No. 444305

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| EQUAL RIGHTS CENTER<br><br>and<br><br>MARC FIEDLER,<br><br>        Plaintiffs,<br><br><br>    *v.*<br><br>HILTON HOTELS CORPORATION,<br><br>        Defendant. | Civ. Action No. 1:07-cv-01528-JR |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO**
**DISMISS OF DEFENDANT HILTON HOTELS CORPORATION**

Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)

Lisa A. Krupicka (admitted pro hac vice)
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)

DATED:  April 3, 2008          Counsel for Defendant

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................. 1

III.   FACTUAL ALLEGATIONS ................................................................ 6

IV.    ARGUMENT ........................................................................................ 8

    A.    Plaintiffs lack standing to bring this lawsuit. ........................................... 8

        1.    ERC does not have standing to sue on its own behalf under the ADA
            or DCHRA. ................................................................................ 10

            a.    ERC lacks Article III standing ..................................... 10

                (i)    ERC's decision to survey alleged violations of the ADA is
                      not an injury in fact traceable to Hilton's actions. ............ 10

                (ii)    The alleged frustration of ERC's mission is insufficient to
                      confer standing. ................................................................ 12

                (iii)    ERC's alleged counseling of unnamed members who
                      allegedly complained of unspecified discrimination at
                      unidentified hotels is too vague to establish standing. ...... 12

                (iv)    The Complaint does not allege a future imminent harm to
                      ERC justifying injunctive relief. ....................................... 14

                (v)    ERC has alleged no violation of the DCHRA by Hilton that
                      has caused it an injury in fact. .......................................... 15

                  (vi)    ERC's alleged harm also is not redressable to the extent it
                      seeks injunctive relief for Franchised Hotels. .................... 16

             b.    Prudential and statutory limitations bar ERC's ADA claim brought
                on its own behalf. ........................................................... 18

        2.    ERC does not have standing to sue on behalf of its members under the
            ADA or the DCHRA. ................................................................ 20

              a.    Plaintiff Mark Fiedler does not have standing to sue under the
                ADA or the DCHRA. ..................................................... 21

             b.    No other ERC member has standing to sue under the ADA or the
                DCHRA. ....................................................................... 25

        c.      ERC lacks standing to sue on behalf of its members for monetary damages under the DCHRA ......................................................... 29

**B.**     Plaintiffs lack standing to challenge the legality of Hilton's website................... 29

**C.**     If the Court is not inclined to dismiss the Complaint, limited discovery relating to Plaintiffs' standing should be ordered to determine whether the Court has jurisdiction over Plaintiffs' claims and, if so, the proper scope of this lawsuit. ......................................................................................................... 31

**D.**     Plaintiff Marc Fiedler's ADA claim also must be dismissed under Fed. R. Civ. P. 12(b)(6) and 12(b)(7). ............................................................................... 32

**E.**     To the extent Plaintiffs are seeking injunctive and other relief for hotels that are not owned by Hilton, their claims must be dismissed under Fed. R. Civ. P. 12(b)(7) because Plaintiffs have failed to join the hotel owners who are indispensable parties. ....................................................................................... 33

     **1.**     The hotel owners are necessary parties under Fed.R. Civ.P. 19(a). ......... 34

          a.      Complete relief cannot be accorded without the Franchised Hotel owners. ........................................................................................... 35

          b.      The disposition of the case in the absence of the Franchised Hotel and Managed Hotel owners will impair their ability to protect their property interests..................................................................... 35

     **2.**     Joinder of the hotel owners and franchisees is not possible in most instances.................................................................................................... 37

**F.**     Plaintiffs' claim that hotels built for first occupancy prior to January 26, 1993 must have accessible rooms dispersed in different room classes or categories must be dismissed under Fed. R. Civ. P. 12(b)(6). ............................................... 41

**V.**        CONCLUSION................................................................................................... 44

# TABLE OF AUTHORITIES

## CASES

Ass'n for Disabled Americans v. Claypool Holdings LLC, No. IP00-0344-C-T/G,
2001 WL 1112109 (S.D. Ind. Aug. 6, 2001) ....................................................................26, 27, 30

Ass'n for Retarded Citizens of Dallas v. Dallas County
Mental Health & Mental Retardation Ctr. Bd. of Trs., 19 F.3d 241 (5th Cir. 1994).....................11

Bancoult v. McNamara, 214 F.R.D. 5 (D.D.C. 2003) ....................................................................39

Bell Atl. Corp. v Twombly, 127 S. Ct. 1955 (2007) ...............................................................10, 31

Boemio v. Love's Rest., 954 F. Supp. 204 (S.D. Cal. 1997) ........................................................29

Ctr. for Law & Educ. v. Dep't of Educ., 315 F. Supp. 2d 15 (D.D.C. 2004) ..............................12

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) ...........................................................14, 22, 26

Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003) .............................................19, 29, 37

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006) ..................................................................15

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990) ......................................................................9

Fair Employment Council of Greater Washington v.
BMC Mktg. Corp., 28 F.3d 1268 (D.C. Cir. 1994) ........................................................9, 10, 14, 16
                                                                                                                          17, 20, 23
                                                                                                                                  30

Fair Hous. Council v. Montgomery Newspapers, 141 F.3d 71 (3d Cir. 1998).............................11

Florida Audubon Soc'y v. Bentsen, 94 F.3d 658 (D.C. Cir. 1996).................................................16

Florida Pub. Telecomm. Ass'n v. FCC, 54 F.3d 857 (D.C. Cir. 1995)..........................................20

GTE New Media Servs. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000)..............................39

Gillis v. McDonald's Corp., Civ. A. No. 91-7202,
1992 WL 236891 (E.D. Pa. Sept. 10, 1992) ...................................................................................37

Harris v. Del Taco, Inc., 396 F. Supp. 2d 1107 (C.D. Cal. 2005) ..........................................23, 26

Healy v. Beer Inst., 491 U.S. 324 (1989)........................................................................................16

Hoepfl v. Barlow, 906 F. Supp. 317 (E.D. Va. 1995)...............................................19, 20

Holt v. American City Diner, Inc., No. 05-1745,
2007 WL 1438489 (D.D.C. May 15, 2007)...................................................23, 26

Hoytt v. Docktor Pet Ctr. Inc., No. 85 C 6850,
1986 WL 11619 (N.D. Ill. Oct. 10, 1986)............................................................37

Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333 (1977).....................................21

Interstate Natural Gas Ass'n v. FERC, 285 F.3d 18 (D.C. Cir. 2002) ...........................................13

Kickapoo Tribe of Indians v. Babbitt, 43 F.3d 1491 (D.C. Cir. 1995).......................34, 35, 36, 38

LPA Inc. v. Chao, 211 F. Supp. 2d 160 (D.D.C. 2002)...................................................11

Lewis v. Casey, 518 U.S. 343 (1996) .......................................................15, 24, 30, 32

Long Term Care Pharmacy Alliance v. United Health Group,
498 F. Supp. 2d 187 (D.D.C. 2007) ...........................................................12, 29

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ...........8, 9, 10, 13, 14,17, 18, 22, 24, 26, 31

Maydak v. FCC, No. 98-1383, 1998 WL 938717 (D.C. Cir. Dec. 9, 1998)..................................13

McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63 (1st Cir. 2003) ...............................................19

Molski v. Mandarin Touch Rest., 385 F. Supp. 2d 1042 (C.D. Cal. 2005) .............................23, 26

Moreno v. G&M Oil Co., 88 F. Supp. 2d 1116 (C.D. Cal. 2000) ...........................................19, 20

Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983) ...............................................36

Nat'l  Treasury Employees Union v. United States,
101 F.3d 1423 (D.C. Cir. 1996).............................................................8, 12, 13

Roberts v. Royal Atlantic Corp., 445 F. Supp. 2d 239 (E.D.N.Y. 2006) ........................................37

Small v. Gen. Nutrition Cos., 388 F. Supp. 2d 83 (E.D.N.Y. 2005) .........................13, 14, 18, 19,
24, 26, 27

Spann v. Colonial Village, 899 F.2d 24 (D.C. Cir. 1990) .............................................................11

Steger v. Franco, Inc., 228 F.3d 889 (8th Cir. 2000) .................................................................26, 30

Telecommunications Research & Action Ctr. v. Allnet
Communications Services, 806 F.2d 1093 (D.C. Cir. 1986) ........................................29

Thompson v. Jiffy Lube Int'l, Inc., 505 F. Supp. 2d 907 (D. Kan. 2007) .....................36

Thompson v. Sand Cliffs Owners Ass'n Inc., No. 3:96cv270/RV,
1998 WL 35177067 (N.D. Fla. Mar. 30, 1998) ............................................................37

Walker v. City of Lakewood, 272 F.3d 1114 (9th Cir. 2001) ........................................11

Warth v. Seldin, 422 U.S. 490 (1975) ...........................................................9, 18, 20, 21

## STATUTES

42 U.S.C. § 12117(a) (2006) ..........................................................................................20

42 U.S.C. § 12133 (2006) ...............................................................................................20

42 U.S.C. § 12181(9) (2006) ..........................................................................................42

42 U.S.C. § 12182 (2006) ...............................................................................................42

42 U.S.C. § 12182(b)(2)(A)(iv) (2006) ..........................................................................42

42 U.S.C. § 12183(a)(1) (2006) ......................................................................................42

42 U.S.C. § 12183(a)(2) (2006) ......................................................................................42

42 U.S.C. § 12183(b)(2)(A)(iv) (2006) ..........................................................................42

42 U.S.C. § 12188(a) (2006) ................................................................................3, 18, 20

42 U.S.C. § 12188(a)(1) (2006) ................................................................................18, 22

42 U.S.C. § 12188(a)(2) (2006) ......................................................................................41

42 U.S.C. § 1981 (2003) .................................................................................................20

42 U.S.C. § 2000a(3)(a) (2006) ......................................................................................22

28 C.F.R. § 36.304(g) (2007) .........................................................................................44

28 C.F.R. § 36.401 (2007) ..............................................................................................43

28 C.F.R. § 36.402 (2007) ..............................................................................................43

28 C.F.R. Pt. 36 (2007) ..............................................................................................42, 43

D.C. Code § 2-1401.01 (2007)...............................................................................15

D.C. Code § 2-1401.02(7) (2007) ..........................................................................16

D.C. Code § 2-1402.01 (2007)...............................................................................16

D.C. Code § 2-1402.31(a)(1) (2007) ......................................................................15

D.C. Code § 13-423 (2001).....................................................................................39

D.C. Code § 13-423(b) (2001) ................................................................................39

Fed. R. Civ. P. 12(b)(1).............................................................................................44

Fed. R. Civ. P. 12(b)(6).................................................................................6, 8, 25, 44

Fed. R. Civ. P. 12(b)(7).......................................................................................25, 33

Fed. R. Civ. P. 19 .............................................................................................5, 6, 34

Fed. R. Civ. P. 19(b) ...............................................................................33, 34, 38, 40

## I.    INTRODUCTION

This is an extraordinary case in which one private D.C. civil rights organization and a resident of Washington, D.C. seek declaratory and injunctive relief under the ADA and the District of Columbia Human Rights Act ("DCHRA") for every hotel in the United States that is owned or operated by Hilton Hotels Corporation ("Hilton").  Depending on whether Plaintiffs are seeking to include the 2,463 franchised hotels that operate under the Hilton family brands that are owned and operated by third parties (the "Franchised Hotels"), the relief sought would apply to anywhere between 391 to 2,854 hotels across the country.  Plaintiffs claim that these hotels contain accessibility barriers and do not have accessible rooms dispersed in different room classes.  Plaintiffs also seek monetary damages under the DCHRA, and they assert -- without actually asking for relief or providing any specifics -- that the Hilton website has "inaccessible" features.

As set forth below, the Complaint is deficient is many respects, not the least of which is its failure to allege the facts necessary to establish Plaintiffs' standing to bring this lawsuit.  In addition, Plaintiffs have failed to name the owners of the 2,809 hotels who will have to pay for the injunctive relief sought in this case.  For these and the many other reasons explained below, the Complaint should be dismissed.

## II.    SUMMARY OF ARGUMENT

The Complaint must be dismissed for the following reasons:

1.    Plaintiff Equal Rights Center ("ERC") has no standing to assert claims under the ADA or the DCHRA against Hilton either on its own behalf (<u>i.e.</u> organizational standing), or on behalf of its members (<u>i.e.</u> representational standing).

a.    With regard to its organizational standing, ERC has not alleged a concrete and particularized injury that is traceable to any unlawful conduct by Hilton. Under D.C. Circuit precedent, the alleged diversion of an advocacy organizations' resources to investigating violations of the law and the supposed frustration of the organization's mission, without more, do not constitute the injury in fact that is required to establish Article III standing. ERC's single sentence allegation that it has had to counsel unnamed members regarding unspecified "discrimination" at unnamed hotels is too vague to satisfy Article III's requirement for an injury in fact.

Even if ERC could establish that it has suffered a past injury in fact as a result of Hilton's conduct, this demonstration would not be sufficient to give it standing to seek injunctive relief (the only relief available to ERC under the ADA). There are no allegations to support a conclusion that ERC is likely to suffer any harm in the future as a result of Hilton's actions. It would be pure speculation for the Court to conclude that ERC would, in the near future, have to provide additional counseling services as a result of alleged ADA violations at any Hilton hotels, let alone every hotel owned and operated by Hilton in the United States for which ERC seeks injunctive relief. Thus, even if the Court were to conclude that ERC's vague allegation about counseling was enough at this stage of the case for ERC to proceed with this litigation, ERC's standing to seek injunctive relief would have to be limited to those hotels that are likely to result in future counseling efforts by ERC. The identity of those hotels -- if any -- are not yet known because ERC has chosen not to include any information in the Complaint that is necessary to make this determination. If the Court does not dismiss this case, it should, at a minimum, require ERC to immediately identify such hotels so that the proper scope of discovery can be set by the Court.

ERC lacks standing to bring a claim under the DCHRA on its own behalf largely for the same reasons why it has no standing under the ADA to seek injunctive relief. The DCHRA only applies to hotels within Washington, D.C., and the Complaint simply does not contain sufficient allegations of harm to ERC resulting from conditions at Hilton hotels located within Washington, D.C. to confer standing.

Assuming, solely for the sake of argument, that ERC has alleged an imminent injury in fact to establish standing to obtain injunctive relief as to some Hilton hotels, ERC still has no Article III standing to seek relief for Franchised Hotels that are neither owned nor operated by Hilton. Hilton has no authority to make physical changes at these Franchised Hotels. The most that Hilton could do is to require the franchisees to comply with the ADA (a requirement that is already in place). Should the franchisees decide not to comply, however, Hilton's only recourse would be to terminate the franchise license agreements. Thus, ERC has no standing with regard to the Franchised Hotels because its claimed injury is not redressable by the Court.

Even if ERC had Article III standing to assert on its own behalf an ADA claim for injunctive relief as to some hotels, prudential limitations on standing would still bar its ADA claim. The prudential standing question here is whether the ADA grants an advocacy group like ERC a right to relief. Title III of the ADA clearly does not. Unlike other civil rights statutes, Title III of the ADA only confers a cause of action on "any person who is being subjected to discrimination. . . or who has reasonable grounds for believing that such a person is about to be subjected to discrimination." 42 U.S.C. § 12188(a) (2006). The Complaint does not allege, nor could it allege, that ERC is being subjected to discrimination or is about to be subjected to discrimination by Hilton.

b.      ERC does not have standing to sue as the representative of its members because the Complaint's allegations, even if true, do not establish that any individual member – including Plaintiff Mark Fiedler -- has standing to seek relief under the ADA or the DCHRA.

Mr. Fiedler does not have standing to sue for injunctive relief under the ADA because the Complaint does not allege that he would have any plans to visit any Hilton hotel in the near future but for his knowledge of alleged accessibility barriers at these hotels.  Moreover, the only hotel identified in the Complaint as a potential destination for Mr. Fiedler – the Hilton Oceanview Resort in South Carolina –is owned by a franchisee comprised of 324 condominium owners.  Accordingly, Mr. Fiedler's alleged injury – the lack of oceanview accessible room -- is not redressable by this Court in the absence of such parties.

Mr. Fiedler has no standing to sue for injunctive relief or monetary damages under the DCHRA because he has alleged no past injury caused by accessibility barriers at a hotel located in Washington D.C.

ERC cannot rely on any of its other members to establish representational standing because the Complaint's allegations about its other unnamed members are so vague that they do not establish that those members would have standing to sue in their own right.

Finally, ERC also does not have standing to sue on behalf of its members for damages under the DCHRA because, under D.C. Circuit precedent, claims for monetary damages require the participation of individual members who were allegedly harmed.

2.      Plaintiffs ERC and Mark Fiedler lack standing to challenge the accessibility of Hilton's website because there is no allegation that either of them, or any member of ERC, is blind or has a vision impairment.  Thus, neither of them could have been injured by the allegedly

inaccessible features of the website.  Furthermore, the single sentence allegation that the website has some inaccessible features is inadequate to state a claim under Title III of the ADA.

3.      Hilton submits that, given the overwhelming deficiencies regarding Plaintiffs' standing, the Complaint should be dismissed.  However, if the Court does not dismiss the case, it should order that discovery into Plaintiffs' standing take place first so that the Court can decide whether, and to what extent, it has jurisdiction over this case.

4.      Even if Plaintiff Mark Fielder were able to establish standing to bring this case, his claims would still have to be dismissed for failure to state a claim and for a failure to join indispensable parties under Fed. R. Civ. P. 19.  The only alleged ADA violation that Mr. Fielder encountered was the lack of an accessible ocean view room at the Hilton Oceanfront Resort in South Carolina.  However, the ADA does not require this hotel – constructed before January 26, 1993 –to disperse accessible rooms across room classes.  Furthermore, even if the ADA required such dispersion, the Hilton Oceanfront Resort is a Franchised Hotel whose 324 individual units at the hotel are owned by individual owners.  The Franchisee and individual owners are indispensable parties without whom this case cannot proceed.

5.      Plaintiffs' claims against the 2,809 hotels that are not owned by Hilton must be dismissed because the owners of those managed and Franchised Hotels are indispensable parties. They are necessary parties to this action because the injunctive relief sought will have a direct financial and physical impact on them and their hotels, respectively.  The Court does not have personal jurisdiction over most of these owners.  With regard to the 24 hotels actually named in the Complaint, the accompanying declarations establish that the Court does not have personal jurisdiction over 11 such owners.  Accordingly, Plaintiffs' claims should be dismissed as to these 11 hotels at this time.  With regard to the 2,830 hotels that are not specifically named, Hilton

should be allowed to file a motion under Fed. R. Civ. P. 19 after the Court rules on Plaintiffs' standing. This would be the most efficient way to proceed because the Rule 19 motion may not be necessary or may be styled differently depending on how the Court rules on the standing issues.

6.      Finally, Plaintiffs' claim that Hilton must provide accessible rooms with two beds and views in hotels built prior to 1993 must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The ADA contains no such requirement.

## III.     FACTUAL ALLEGATIONS

The Complaint alleges that ERC is a Washington, D.C. "non-profit" civil rights organization whose purpose is to "identify, challenge, and eliminate discrimination in housing, employment, public accommodations, and government services through education, research, testing, counseling, enforcement, and advocacy." (Compl. ¶ 3.) The Complaint alleges that Plaintiff Fiedler is a person with a disability who uses a wheelchair for mobility. (Id. ¶ 4.)

Plaintiffs allege that there are accessibility barriers violating the ADA at the Hilton Washington Hotel and Capital Washington Hotel in Washington D.C., and the Hilton Oceanfront Resort in South Carolina. (Id. ¶¶ 15-17.) The Complaint does not specify how Plaintiffs became aware of these alleged accessibility barriers. The Complaint further alleges that in response to these alleged violations, ERC conducted site surveys of 21 other Hilton-branded hotels throughout the country and found alleged ADA violations at those hotels as well. (Id. ¶¶ 17-18.) In addition, Plaintiffs claim that approximately 31% of Hilton hotels offer ADA accessible rooms with only one bed and that, of the Hilton hotels that offer rooms with a view as a different category, approximately 86% do not have an ADA accessible rooms with a such a view. (Id. ¶¶ 7, 9.) Plaintiffs claim that the failure to provide accessible rooms with views and two beds violates the ADA and the DCHRA.

ERC claims that it has suffered (1) "the loss or diversion of resources in counseling its members who complained of discrimination at Defendant's hotels, and in investigating Defendant's conduct" (Compl. ¶ 3); (2) frustration of "ERC's mission of promoting equal opportunities for persons with disabilities with respect to the use of public accommodations" (Compl. ¶ 21(a)); (3) the incurring of "costs necessary to investigate complaints regarding Defendant's violations of the ADA and the DCHRA" (Compl. ¶ 21(b)); and (4) the diversion of "resources from other issues vital to its membership, such as accessible housing, transportation and public services, in order to combat Defendant's violations of the ADA and the DCHRA." (Compl. ¶ 21(c).) The Complaint contains no additional facts concerning these alleged injuries.

With regard to ERC's members, the Complaint only alleges the following: "ERC's membership includes individuals with disabilities who patronize Defendant's hotels through the Washington, D.C. metropolitan area and nationally, or who would do so but for their knowledge of these accessibility barriers." (Compl. ¶ 20.) ERC also alleges that Hilton's "policies, practices and procedures prevent Mr. Fiedler and other unnamed members of the ERC from enjoying in a meaningful, independent manner the goods and services offered at Defendant's hotels in the Washington, D.C. metropolitan area and throughout the nation. Unless the Court enjoins Defendant from such discrimination, Mr. Fiedler and other unnamed members of the ERC will continue to be excluded from enjoying on an equal basis the goods and services offered by Defendant's hotels that they would otherwise patronize." (Compl. ¶ 22.)

With regard to Plaintiff Fiedler, the Complaint alleges that in 2006, he called the Hilton Oceanfront Resort to book a wheelchair accessible room with a view, and was informed that the hotel did not have accessible rooms with a view. (Id. ¶¶ 10-11.) The Complaint alleges that "Mr. Fiedler has a continuing desire to vacation at the Hilton Oceanfront Resort." (Id. ¶12.) The

Complaint contains no allegation that Mr. Fielder has ever visited the Hilton Oceanfront Resort

or another Hilton hotel, has knowledge of accessibility barriers at any Hilton hotel, or would

have imminent plans to go to any Hilton hotel but for the knowledge of accessibility barriers.

The Complaint contains one reference to the Hilton website which reads, in its entirety:

"The Hilton website, at www.hilton.com, contains inaccessible features, and does not comply

with website accessibility guidelines." (Id. ¶ 19.)  The Complaint does not specify what these

inaccessible features are, nor does it allege that either Mr. Fielder or any ERC member is blind or

has a vision impairment.

## IV.    ARGUMENT

### A.    Plaintiffs lack standing to bring this lawsuit.

Article III of the Constitution limits a federal court's jurisdiction to actual cases and

controversies.  Accordingly, a plaintiff's standing is the threshold question in every federal case,

and must be decided before the Court can allow the litigation to proceed.  Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992).  To establish standing to sue, Plaintiffs must prove the

following:

> First, the plaintiff must have suffered an injury in fact — an invasion of a
> legally protected interest which is (a) concrete and particularized, and (b)
> actual or imminent, not conjectural or hypothetical.  Second, there must be a
> causal connection between the injury and the conduct complained of — the
> injury has to be fairly traceable to the challenged action of the defendant,
> and not the result of the independent action of some third party not before
> the court. Third, it must be likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision.

Id. at 560-61 (internal citations and quotations omitted).  "These requirements apply whether an

organization asserts standing to sue, either on its own behalf, or on behalf of its members."  Nat'l

Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

Furthermore, "[t]o pursue an injunction…[a plaintiff] must allege a likelihood of future

violations of their rights,… not simply future effects from past violations." Fair Employment
Council of Greater Washington v. BMC Mktg. Corp., 28 F.3d 1268, 1273 (D.C. Cir. 1994)
(holding that the tester plaintiffs had failed to establish standing for injunctive relief because
their complaint failed to allege that they were ever likely to return to the defendant to seek
employment referrals, let alone that they would do so "in the reasonably near future").
(Emphasis in original).

As parties invoking federal jurisdiction, Plaintiffs have the burden of establishing all of
the elements of standing. Lujan, 504 U.S. at 560. In addition, "[s]ince they are not mere
pleading requirements but rather an indispensable part of the plaintiff's case, each element must
be supported in the same way as any other matter on which the plaintiff bears the burden of
proof, i.e., with the manner and degree of evidence required at the successive stages of the
litigation." Id. at 561.

For purposes of ruling on a motion to dismiss for lack of standing, a court must accept as
true all material allegations of the complaint, and must construe the complaint in favor of the
plaintiff. Warth v. Seldin, 422 U.S. 490, 501 (1975). However, "standing cannot be inferred
argumentatively from averments in the pleadings, but rather must affirmatively appear in the
record… . And it is the burden of the party who seeks the exercise of jurisdiction in his favor,
clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the
dispute… [A plaintiff] must allege … facts essential to show jurisdiction. If [a plaintiff] fails to
make the necessary allegations, [it has] no standing." FW/PBS, Inc. v. City of Dallas, 493 U.S.
215, 231 (1990) (internal quotations omitted).

The Supreme Court recently clarified the question of what facts a plaintiff must plead in
order to state a claim under Rule 8 of the Federal Rules of Civil Procedure. See Bell Atl. Corp. v

Twombly, 127 S. Ct. 1955, 1964-65 (2007).  The Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  The Court further opined that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 at 235-36 (3d ed. 2004)).  The Court observed that "the pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (internal citations and quotations omitted) (emphasis added).

### 1.    ERC does not have standing to sue on its own behalf under the ADA or DCHRA.

#### a.    ERC lacks Article III standing

ERC has no standing to sue on its own behalf because the allegations of the Complaint, even if true, do not establish that ERC has suffered an "injury in fact" that is "fairly traceable" to any action by Hilton.  Lujan, 504 U.S. at 560.  ERC alleges that it has been injured in three ways: (1) It had to divert resources to investigating alleged violations at Hilton hotels (Compl. ¶ 21(b) and (c)); (2) Its mission has been frustrated (Id. ¶ 21(a)); and (3) It had to divert resources to counseling its members (Id. ¶ 3).  As discussed below, none of these allegations are sufficient to confer standing on ERC to maintain this lawsuit on its own behalf.

#### (i)    ERC's decision to survey alleged violations of the ADA is not an injury in fact traceable to Hilton's actions.

The D.C. Circuit held in BMC Marketing, 28 F.3d at 1276-77, that an advocacy group's diversion of its resources to investigating a defendant's violations of the law does not constitute an "injury in fact" that provides a basis for Article III standing.  The D.C. Court stated:

> [W]e explicitly reject the Council's suggestion that the mere expense of testing BMC constitutes "injury in fact" fairly traceable to BMC's conduct.  The diversion of resources to testing might well harm the Council's other programs, for money spent on testing is money that is not spent on other things.  But <u>this particular harm is self-inflicted; it results not from any actions taken by BMC, but rather from the Council's own budgetary choices</u>. . . . One can hardly say that BMC has injured the Council merely because the Council has decided that its money would be better spent by testing BMC than by counseling or researching.

<u>Id.</u> (emphasis added).  <u>See also</u> <u>Spann v. Colonial Village, Inc.</u>, 899 F.2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.  Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation.").[1]  The Complaint explicitly states that ERC decided to physically survey at least 21 Hilton-branded hotels even though there is no allegation that anyone (not even Plaintiff Fiedler) ever actually complained about these properties to ERC.  (Compl. ¶¶ 7-8, 14-19.)[2]  Like the advocacy group in <u>BMC Marketing</u>, the ERC did not have to expend its resources to test 21 hotels.  Its decision to do so was "self-inflicted" harm that is not traceable to Hilton's conduct.  <u>See also</u> <u>LPA Inc. v. Chao</u>, 211 F. Supp. 2d 160, 165 (D.D.C. 2002) (expenditure of money to lobby against

_____

[1]    This rule is also the law in the Third, Ninth, and Fifth Circuits.  <u>See</u>, <u>e.g.</u>, <u>Fair Hous. Council v. Montgomery Newspapers</u>, 141 F.3d 71, 80 (3d Cir. 1998) ("We are convinced that the district court's reliance on the position taken in <u>Spann</u> and <u>BMC Marketing</u> represents the better-reasoned approach.  We hold, therefore, that the pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III."); <u>Walker v. City of Lakewood</u>, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001) ("Because we agree that a plaintiff cannot establish standing simply by filing its own lawsuit, we will not consider the time and money the [organization] has expended in prosecuting this suit in deciding if the [organization] has standing to pursue the retaliation claims."); <u>Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trs.</u>, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.").

[2]    The Complaint does not specify how ERC learned of the alleged violations at the Capital Hilton, the Washington Hilton, and the Hilton Oceanfront resort.

legislation that hindered organization's mission did not constitute an injury in fact; <u>Ctr. for Law & Educ. v. Dep't of Educ.</u>, 315 F. Supp. 2d 15, 24-25 (D.D.C. 2004) (organization's expenses in the pursuit of its agenda are self-effectuating and do not constitute an injury in fact); <u>Long Term Care Pharmacy Alliance v. United Health Group, Inc.</u>, 498 F. Supp. 2d 187, 191-92 (D.D.C. 2007) (drain on organization's resources due to its need to counteract defendants' illegal practices does not constitute injury in fact).

    **(ii)  The alleged frustration of ERC's mission is insufficient to confer standing.**

   ERC alleges that Hilton's actions have frustrated "ERC's mission of promoting equal opportunities for persons with disabilities with respect to the use of public accommodations." (Compl. ¶ 21(a).)  The D.C. Circuit held in <u>National Treasury Employees Union</u>, 101 F.3d at 1429, that a "conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing.  Frustration of an organization's objectives is the type of abstract concern that does not impart standing. . . .  Individual persons cannot obtain judicial review of otherwise non-justiciable claims simply by incorporating, drafting a mission statement, and then suing on behalf of the newly formed and extremely interested organization." (internal citations omitted).   The D.C. Circuit held that in addition to a direct conflict between the defendant's conduct and the organizations' mission, it must be alleged "that a defendant's conduct has made the organization's <u>activities</u> more difficult."  <u>Id.</u> at 1430 (emphasis in original).  There is simply no allegation in the Complaint that Hilton's conduct has made ERC's activities more difficult.

    **(iii)  ERC's alleged counseling of unnamed members who allegedly complained of unspecified discrimination at unidentified hotels is too vague to establish standing.**

As previously stated, to establish standing, ERC must allege a "concrete" and "particularized" injury resulting from the Defendant's unlawful conduct that can be redressed by a favorable decision of the court. See Lujan, 504 U.S. at 560-61. ERC's allegation that it had to counsel unnamed members regarding unspecified "discrimination" at unidentified hotels (Compl. ¶ 3) is insufficient to establish an injury in fact because it is neither "particularized" nor "concrete," and there are no facts alleged to attribute the supposed need for counseling to any specific conduct by Hilton.

The Complaint fails to identify (1) how many complaints ERC received that resulted in counseling efforts; (2) which Hilton hotels were at issue; or (3) how much counseling took place. In short, the Complaint provides no information about the extent and nature of the alleged counseling and how it in anyway was caused by Hilton's conduct. ERC's vague allegation about counseling does not meet Article III's "injury in fact" requirement, even at this stage of the case. See Maydak v. FCC, No. 98-1383, 1998 WL 938717 (D.C. Cir. Dec. 9, 1998) (granting motion to dismiss because allegation of harm to plaintiff's financial interest was too "vague and conclusory" to confer Article III standing); Interstate Natural Gas Ass'n v. FERC, 285 F.3d 18, 46 (D.C. Cir. 2002) (dismissing gas pipeline owner's petition for review for want of jurisdiction because the allegation that the owner would incur "significant expense" in implementing new regulatory requirements by having to modify its computer systems was too "vague" to confer standing). If anything, the vagueness of the allegation suggests that the alleged counseling efforts were so insubstantial as to not constitute an injury in fact at all. See Small v. Gen. Nutrition Cos., 388 F. Supp. 2d 83, 95 (E.D.N.Y. 2005) (finding unlikely that organization's devotion of one and a half hours to responding to a complaint regarding the defendant's alleged ADA violation could constitute an injury in fact for standing purposes).

**(iv)    The Complaint does not allege a future imminent harm to ERC justifying injunctive relief.**

Assuming solely for the sake of argument that ERC has alleged sufficient facts on which the court could conclude that it has had to expend significant resources to counsel its members as a result of alleged architectural barriers at Hilton hotels, ERC still has no standing to bring an ADA or DCHRA claim for injunctive relief because it has not alleged that it is likely to suffer a violation of its rights in the near future.  As the D. C. Circuit has stated:  "To pursue an injunction. . . plaintiffs must allege a likelihood of future <u>violations</u> of their rights by [defendant], not simply future <u>effects</u> from past violations."  <u>BMC Marketing</u>, 28 F.3d at 1273 (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983)) (emphasis in original).  In <u>BMC Marketing</u>, the D.C. Circuit held that the two black tester plaintiffs who had been denied employment allegedly based on race did not have standing to seek injunctive relief because they had not alleged any facts that would suggest a "likelihood of <u>future violations</u> of their rights" by the defendant.  <u>Id.</u> (emphasis in original and added).

There is not a single allegation in the Complaint that, if true, would establish that ERC's rights under the ADA or the DCHRA will likely be violated by Hilton in the future.  The fact that ERC has had to allegedly counsel unnamed members about unspecified "discrimination" at unidentified hotels <u>in the past</u> does not confer ERC standing to seek injunctive relief.  <u>See</u> <u>Lujan</u>, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects.")  Accordingly, ERC's claim for injunctive relief under the ADA and DCHRA must be dismissed.

Even assuming solely for the sake of argument that ERC's allocation of resources to counsel its members constitutes an "injury in fact," ERC would only have standing to seek

- 14 -

injunctive relief for those hotels that had ADA violations that are likely to result in future counseling efforts, and monetary damages for D.C. hotels that actually resulted in past counseling efforts by ERC.  Under no circumstances could ERC have standing to seek relief with regard to every Hilton hotel in the United States that is owned and/or operated by Hilton.  See Lewis v. Casey, 518 U.S. 343, 357 (1996).  In Lewis, the district court -- in response to a class action lawsuit brought by inmates claiming that their law library services were inadequate -- had entered a broad injunction requiring special services or special facilities for non-English speakers, prisoners in lock-down, and the inmate population at large.  Id. at 358.  The Supreme Court reversed, concluding that this relief should not have been ordered because it was unrelated to the harm actually suffered by the only plaintiff who had standing to bring the case.  Id.; see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) ("our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press").  To state the obvious, ERC cannot seek injunctive relief or monetary damages for hotels that did not or will not cause it to expend any resources on counseling.

**(v)    ERC has alleged no violation of the DCHRA by Hilton that has caused it an injury in fact.**

The DCHRA's prohibitions only apply to conduct within the District of Columbia.[3] Section § 2-1401.01 of the DCHRA states that it was enacted to "secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including, but not limited to … disability."  D.C. Code § 2-1401.01 (2007) (emphasis added).  The first line of

---

[3] The DCHRA states that it is an "unlawful discriminatory practice to… "deny, directly or indirectly, any person the full and equal enjoyment of all the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodations."  D.C. Code § 2-1402.31(a)(1) (2007).

subchapter II of the statute which contains all of the non-discrimination provisions states that "[e]very individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District."  D.C. Code § 2-1402.01 (2007) (emphasis added).[4]  Thus, the DCHRA was not intended to reach conduct outside of Washington, D.C.  Indeed, had it been drafted to reach conduct outside of D.C., the DCHRA would violate the Commerce Clause of the Constitution.  See Healy v. Beer Inst., 491 U.S. 324, 336-37 (1989) (holding that "the Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State" and striking down a Connecticut statute that had the effect of controlling commercial activity occurring outside the boundary of the state) (emphasis added).

ERC has alleged no facts to establish an injury in fact to itself that would give it standing to sue under the DCHRA.  ERC's decision to investigate three D.C. hotels is a self-inflicted injury under BMC Marketing and Article III standing cannot be based on this injury.  BMC Marketing, 28 F.3d at 1276.  The Complaint contains no allegation that ERC had to counsel anyone as a result of alleged accessibility barriers existing at any D.C. hotels.

### (vi)    ERC's alleged harm also is not redressable to the extent it seeks injunctive relief for Franchised Hotels.

"In order to satisfy the 'irreducible constitutional minimum of standing,' a litigant must demonstrate that it has suffered a 'concrete and particularized' injury that is. . . redressable by the court."  Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting Lujan) (emphasis added).  "Redressability examines whether the relief sought, assuming that the

---

[4]  The term "District" in the DCHRA is defined as the District of Columbia.  D.C. Code § 2-1401.02(7) (2007).

court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff."

Id. at 663-64.

Although the Complaint is unclear on this point, to the extent that ERC is seeking relief

from this Court for the 2,463 Hilton Franchised Hotels that are not owned or operated by Hilton,

ERC has cannot show that an injunction from this Court will likely redress its alleged injury.  In

fact, an injunction would not redress ERC's alleged injury because Hilton has no right to make

physical changes at these hotels which it neither owns nor operates.  (Raynor Decl. ¶ 4.)  Thus,

the Court cannot redress ERC's alleged injury by mandating that Hilton remove any physical

barriers at these hotels.  Under the franchise agreements, Hilton may only request that the

changes be made, but if the franchisee chooses not to make the changes, Hilton's only possible

recourse would be to terminate the license agreement.  (Id.)  This outcome would neither result

in the removal of accessibility barriers nor the creation of accessible rooms in different room

classes.

The Supreme Court addressed a similar situation in Lujan where the plaintiffs had failed

to name as parties to the case the agencies that funded the projects which allegedly caused them

harm.  Lujan, 504 U.S. at 567.  Instead, the plaintiffs brought suit against the Secretary of the

Interior who had promulgated the regulations which governed the allegedly harmful projects.

The Court observed that a court ordering the Secretary to revise his regulations "would not

remedy respondents' alleged injury unless the funding agencies were bound by the Secretary's

regulation, which is very much an open question."  Id. at 568.  The Supreme Court concluded

that because of this uncertainty, the injury was not likely to be redressable.  Id. at 571.

As in Lujan, ordering Hilton to instruct its franchisees to remove architectural barriers at

Franchised Hotels would not necessarily result in the removal of the barriers.  Thus, ERC's

alleged injury, to the extent that it is claimed to be due to conditions at Franchised Hotels, is not likely to be redressed in this lawsuit against Hilton.  Thus, ERC has no standing to bring an action relating to the Franchised Hotels and its claim should be dismissed as to those hotels.

> **b.     Prudential and statutory limitations bar ERC's ADA claim brought on its own behalf.**

The Supreme Court stated in <u>Warth v. Seldin</u>, 422 U.S. at 490, that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement. . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Id.</u> at 499.  The Supreme Court explained further that when a plaintiff seeks to vindicate legal rights that exist solely by virtue of a statute, "the [prudential] standing question in such cases is <u>whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.</u>" <u>Id.</u> at 500 (emphasis added).

The only provision in Title III of the ADA that confers on private litigants a cause of action for violations of that Title is 42 U.S.C. § 12188(a).  This section limits judicial relief to "<u>any person who is being subjected to discrimination . . . or who has reasonable grounds for believing that such a person is about to be subjected to discrimination.</u>"  42 U.S.C. § 12188(a)(1) (emphasis added).  Simply put, ERC has not alleged any facts in the Complaint to suggest that it is "being subjected to discrimination" or is "about to be subjected to discrimination."

Every court to have analyzed Section 12188(a)(1)'s language with regard to an advocacy organization's attempt to bring a Title III ADA lawsuit on its own behalf has dismissed the claim.  In <u>Small</u>, 388 F. Supp. 2d at 92, the district court held that the advocacy organization did not have standing to sue on its own behalf because "[t]he enforcement provision of Title III clearly envisions that a plaintiff himself must currently be suffering or be about to suffer

discrimination."  Similarly, in <u>Clark v. McDonald's Corp.</u>, 213 F.R.D. 198, 210-11 (D.N.J.

2003), the district court held that the association representing disabled members could not sue in

its own right under Title III of the ADA because "the language of the enforcement provision …

of the ADA does not evince a congressional intent to eliminate a prudential barrier to the

standing of an organization to sue to remedy injury it suffers as a result of discrimination against

the disabled, where the organization is not itself being subjected to, nor is itself under threat of

being subjected to, such discrimination."[5]

Likewise, every court to have interpreted Section 12188(a)(1)'s language as applied to

individual Title III plaintiffs has concluded that such a plaintiff may only seek relief if he has

been or has reasonable grounds to believe that he is about to be subjected to discrimination.  <u>See</u>

<u>McInnis-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 69 (1st Cir. 2003) (holding that Title III of the

"ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate

other people's injuries," and that Section 12188 did not "displace the normal background

prudential standing limitations."); <u>Hoepfl v. Barlow</u>, 906 F. Supp. 317, 323 (E.D. Va. 1995)

("nothing in the language of either § 12188 or the cross-referenced § 2000a-3(a) suggest that it

was intended to alter the normal prudential rules on standing."); <u>Moreno v. G&M Oil Co.</u>, 88 F.

Supp. 2d 1116, 1117 (C.D. Cal. 2000) (concluding as a matter of prudential standing that

language of Section 12188(a)(1) did not permit a plaintiff to assert claims on behalf of others

similarly situated with respect to 82 other gas stations that the plaintiff had not visited).

---

[5]    The question of whether Title III of the ADA confers on ERC standing to sue in
its own right (<u>i.e.</u> organizational standing) is distinct from the question of whether ERC has
associational standing to sue on behalf of its members.  The answer to that separate question is
addressed in Section IV.A.2.

ERC will no doubt claim that the ADA is a remedial civil rights statute to which no prudential limitations should apply.  However, the Supreme Court's and the D.C. Circuit's unwillingness to alter prudential limitations on standing for actions brought under 42 U.S.C. § 1981 (2003) (another civil rights statute) shows that the courts will not discard prudential rules just because a civil rights statute is involved.  Warth, 422 U.S. at 512-14; BMC Marketing, 28 F.3d at 1281.

Furthermore, no other civil rights statute uses the narrow language of Section 12188(a). Congress chose broader language when it determined who could sue under Titles I and II of the ADA.  These two titles confer causes of action upon "any person alleging discrimination on the basis of disability."  42 U.S.C. §§ 12117(a) and 12133 (2006) (emphasis added).  The D.C. Circuit has held that when "Congress uses different language in different sections of a statute, it does so intentionally."  Florida Pub. Telecomm. Ass'n v. FCC, 54 F.3d 857, 860 (D.C. Cir. 1995).  Thus, well-settled prudential limitations on standing and the language of 42 U.S.C. § 12188(a) bar the ADA claim that ERC asserts on its own behalf.

**2.    ERC does not have standing to sue on behalf of its members under the ADA or the DCHRA.**

As set forth above, ERC's Complaint does not allege facts, that if, true, would establish that it has standing to bring this lawsuit on its own behalf.  However, ERC may still proceed with this lawsuit as the representative of its members if it meets the requirements for representational standing.  "The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy."  Warth, 422 U.S. at 511.  An association may bring an action on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

participation of individual members in the lawsuit." Hunt v. Washington State Apple Adver.

Comm'n, 432 U.S. 333, 343 (1977).  As discussed below, ERC cannot establish standing as a

representative of its members because (1) the Complaint does not allege facts that would

establish that any one of ERC's members has standing to sue; and (2) the monetary damages

claim asserted by the ERC under the DCHRA requires the participation of each individual

member who was allegedly harmed.

> **a.    Plaintiff Mark Fiedler does not have standing to sue under the ADA or the DCHRA.**

The Complaint alleges that Plaintiff Mark Fiedler is a member of ERC.  (Compl. ¶ 4.)  It

further alleges that, in 2006, Mr. Fiedler attempted to book a wheelchair-accessible room at the

Hilton Oceanfront Resort in Hilton Head, South Carolina, and was informed that there were no

wheelchair accessible rooms with an oceanview room at this hotel.  (Compl. ¶ 11.)  Apparently

Mr. Fiedler never visited the hotel because the Complaint merely goes on to allege that "Mr.

Fiedler has a continuing desire to vacation at the Hilton Oceanfront Resort."  (Compl. ¶ 12.)  The

only other reference to Mr. Fiedler is contained in paragraph 22 which states:

> Defendant's policies, practices and procedures prevent Mr. Fiedler and other unnamed
> members of the ERC from enjoying in a meaningful, independent manner the goods and
> services offered at Defendant's hotels in the Washington, D.C. metropolitan area and
> throughout the nation.   Unless the Court enjoins Defendant from such discrimination,
> Mr. Fiedler and other named members of the ERC will continue to be excluded from
> enjoying on an equal basis the goods and services offered by Defendant's hotels that they
> would otherwise patronize.

(Compl. ¶ 22.)

The allegations, even assuming arguendo that they are true, are insufficient to establish

that Mr. Fiedler has standing to bring an ADA claim in this Court.  As a private plaintiff, Mr.

Fiedler can only seek injunctive relief under the ADA.  42 U.S.C. §§ 12188(a)(1), 2000a(3)(a)

(2006).  The Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself

show a present case or controversy regarding injunctive relief. . .if unaccompanied by any continuing, … adverse effects." Lujan, 504 U.S. at 564 (quoting City of Los Angeles v. Lyons, 461 U.S. at 102). To have standing, Mr. Fiedler must demonstrate an "imminent injury." Id. Merely having a "continuing desire to vacation at the Hilton Oceanfront Resort" is not enough to establish such an imminent injury. In Lujan, the plaintiff advocacy organization had submitted affidavits from two members stating that they had been to the locations where the endangered and threatened species live, and, like Mr. Fiedler claims here, that they intended to return to these locations in the future to observe these animals. Id. at 563-64. The Supreme Court held that "[s]uch 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." Id. at 564.

Similarly, in Lyons, the Supreme Court held that a plaintiff had no standing to seek injunctive relief directing the police department to stop using the allegedly illegal chokeholds that had seriously injured him. Lyons, 461 U.S. at 105. Despite the allegations of past injury, the Supreme Court held that the plaintiff's standing to seek the injunction "depended on whether he was likely to suffer future injury from the use of chokeholds by police officers," not on whether he had been subjected to illegal conduct in the past. Id.

Following Lyons, the D.C. Circuit held in BMC Marketing that the tester plaintiffs who could only seek injunctive relief under Title VII had no standing to assert such a claim because their complaint only alleged the possibility, but not the likelihood, that they would have future contact with the defendant who had allegedly discriminated against them in the past. 28 F.3d at 406-07.

Although the D.C. Circuit has not considered Article III standing requirements for injunctive relief in the context of a Title III ADA claim, the U.S. District Court for the District of Columbia recently decided this issue in <u>Holt v. American City Diner, Inc.</u>, No. 05-1745, 2007 WL 1438489, at *6 (D.D.C. May 15, 2007). The plaintiff in that case had alleged in his complaint that (1) he "continues to desire to and intends visit [sic] the Defendant's premises in the future, but continues to be denied full, safe and equal access due to the violations which continue to exist;" (2) "he intends to go back to the restaurant once these barriers are removed;" and (3) that "[h]e travels to this [the area of the restaurant] approximately three times per week." <u>Id.</u> On these facts, the court concluded that the plaintiff has neither a concrete nor specific nor imminent plan to return to the Restaurant, and dismissed his claim for lack of standing to seek injunctive relief under the ADA. <u>Id.</u> <u>See also</u> <u>Harris v. Del Taco, Inc.</u>, 396 F. Supp. 2d 1107, 1124-25 (C.D. Cal. 2005) (plaintiff's claim that he would visit the restaurant again in the future was not plausible where he lived more than 573 miles away)[6]; <u>Molski v. Mandarin Touch Rest.</u>, 385 F. Supp. 2d 1042, 1045-46 (C.D. Cal. 2005) (plaintiff failed to demonstrate imminent future injury where the restaurant was located more than 100 miles away and plaintiff had only visited the restaurant once).

The allegations in the Complaint simply do not establish that Mr. Fiedler would have a concrete or even imminent plan to stay at the Hilton Oceanfront Resort but for his knowledge of the lack of an accessible oceanview room. Mr. Fiedler's only allegation on this issue merely states that he has a continuing desire to stay at this hotel. This single sentence allegation falls far short of the allegations in <u>Holt</u> which were deemed insufficient by the court to confer standing

_____

[6]     Plaintiff Fiedler lives a similar distance from the Hilton Head, South Carolina Hilton Oceanfront Resort.

for injunctive relief, and is nothing more than the "some day" intentions that the Supreme Court held in <u>Lujan</u> were inadequate for such relief. <u>Lujan</u>, 504 U.S. at 564. There are no allegations as to why Mr. Fiedler wished to stay at the Hilton Oceanfront Resort (as opposed to the many other resorts in that area), whether Mr. Fiedler had ever even been to Hilton Head, South Carolina, or when in the imminent future Mr. Fiedler would have occasion to stay at this hotel but for the lack of an accessible ocean view room. Mr. Fiedler has failed to allege facts showing that he has standing to seek injunctive relief under the ADA. Accordingly, Mr. Fiedler's ADA claim must be dismissed, and ERC cannot base its representational standing on him.

Assuming, solely for the sake of argument, that Mr. Fiedler could establish standing to seek relief under the ADA, his standing would be limited to an ADA claim for injunctive relief for the Hilton Oceanview Resort. He certainly would not have standing to seek injunctive relief for the other 2853 Hilton branded hotels in the country because he has alleged no injury caused by any alleged ADA violations at those other hotels. <u>See</u> <u>Lewis</u>, 518 U.S. at 357 (injunctive relief must be limited to conditions that caused the plaintiff's injury). To the extent that ERC's representational standing is predicated on Mr. Fiedler's standing, its ADA claims against Hilton would also be limited to this one hotel. <u>See</u> <u>Small</u>, 388 F. Supp. 2d at 98 ("because associational standing exists only insofar as organization members have standing, associational standing may not be broader or more extensive than the standing of the organization's members").

Furthermore, as set forth in Section IV.F., Mr. Fiedler's ADA claim (and therefore ERC's derivative ADA claim) must be dismissed under Fed. R. Civ. P. 12(b)(6) because the ADA does not require facilities constructed prior to January 26, 1993 to disperse its accessible rooms. Dismissal of Mr. Fiedler's (and therefore ERC's) ADA claim is also necessary under Fed. R.

Civ. P 12(b)(7) because, as explained in Section IV.E., the franchisee and owners of this hotel are indispensable parties under Rule 19(b).

Mr. Fiedler has no standing to bring a claim under the DCHRA because he has not alleged that he has been denied the equal enjoyment of any goods, services, facilities, privileges, advantages, or accommodations of any Hilton hotel located within the District of Columbia. The only Hilton-branded hotel Mr. Fiedler allegedly wished to visit was the Hilton Oceanfront Resort located in South Carolina (Compl. ¶¶ 10-12), and the DCHRA does not and cannot apply to this hotel. (See discussion supra at 16-17.) There is no allegation that Mr. Fiedler has ever visited or attempted to visit a Hilton-branded hotel located in Washington, D.C., or that he experienced discrimination at a Hilton-branded hotel in Washington, D.C. Mr. Fiedler has not even alleged that he had knowledge of any supposed discriminatory conditions at a Hilton-branded hotel in Washington, D.C., or that he would have patronized such a hotel but for that knowledge. Thus, ERC cannot base its representational standing to sue under the DCHRA on Mr. Fielder.

> **b.    No other ERC member has standing to sue under the ADA or the DCHRA.**

ERC also cannot base its representational standing on any of its other members because there are no allegations to establish that those other members have standing to bring an action under the ADA or the DCHRA.

Because private plaintiffs are limited to injunctive relief under the ADA, the standing analysis for individual plaintiffs in ADA Title III actions requires more than a mere showing that they have encountered a barrier to access at a public accommodation in the past. See discussion supra at 22-23. Consistent with the Supreme Court's holdings in Lyons, 461 U.S. at 105, and Lujan, 504 U.S. at 564, the federal courts also have required a showing that the plaintiff has a plausible intention or desire to visit the public accommodation in the future, but for the barriers

to access.  See Harris, 396 F. Supp. 2d at 1124-25; Molski, 385 F. Supp. 2d at 1045-46; Holt,

2007 WL 1438489, at *7.   Furthermore, although a plaintiff need not engage in the futile gesture

of visiting a building with known barriers, a plaintiff must show, in that instance, that he had

knowledge of the barriers and that he would have visited the building in the imminent future but

for those barriers.  See Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000) (several plaintiffs

had no standing under Title III of the ADA because there was no evidence that they had

knowledge of the building's barriers); Small, 388 F. Supp. at 88 (granting motion to dismiss for

lack of standing and refusing to infer that the plaintiff both knew of the barrier in certain stores

and would visit those stores just because he regularly traveled in their immediate vicinity, even if

the barriers are easily observed by passersby); Ass'n for Disabled Americans v. Claypool

Holdings LLC, No. IP00-0344-C-T/G, 2001 WL 1112109, at *19 (S.D. Ind. Aug. 6, 2001)

(granting summary judgment on the Complaint for defendant hotel because advocacy

organization did not establish representational standing to sue under Title III of the ADA where

there was no allegation that any of its members actually had knowledge of the barriers at the

hotel).

        The decisions in Association for Disabled Americans and Small are instructive.  In

Association for Disabled Americans, a disability advocacy organization claimed that it had

standing to bring an action under Title III of the ADA against the owners of a hotel on behalf of

two of its members who had specific plans to be in the area of the hotels and wished to stay at

the hotel.  2001 WL 1112109, at *19.  The court granted summary judgment on the Complaint,

concluding that these two members, and therefore the organization, did not have standing to sue

because there was no allegation that these members had knowledge of any barriers at the hotel.

Id.  The Court also refused to find standing based on the organization's claim "that other

members of the Association would like to stay at the [hotel] while assisting the Indiana chapter [of the organization]." The court noted "no plans or reservations have been made for any such members to visit the hotel, and no date certain for their visit has been announced. As such, the desire of such members to visit the hotel at some unspecified time in the future is insufficient to confer standing on any such members." Id., at *20.

In Small, the disability advocacy organization also claimed that it had associational standing to sue under Title III of the ADA as a representative of its members. The court disagreed, finding that the Complaint's allegations failed to establish that the only person identified in the Complaint as a member had standing. The court stated: "Plaintiffs have alleged neither an instance in which [the member] actually encountered access barriers at a single GNC store nor, on a futile gesture theory, that he was actually aware of such barriers at any particular stores and would visit those stores in the imminent future but for the barriers." 388 F. Supp. at 97.

With these legal principles in mind, we now turn to the Complaint. The only statements in the Complaint regarding alleged harm to ERC's members (other than Mr. Fiedler who does not have standing for the reasons set forth in Section IV.A.2.(a)) are as follows:

- "ERC's membership includes individuals with disabilities who patronize Defendant's hotels through the Washington, D.C. metropolitan area and nationally, or who would do so but for their knowledge of these accessibility barriers." (Compl. ¶ 20.)

- "Defendant's policies, practices and procedures prevent Mr. Fiedler and other unnamed members of the ERC from enjoying in a meaningful, independent manner the goods and services offered at Defendant's hotels in the Washington, D.C. metropolitan area and throughout the nation. Unless the Court enjoins Defendant from such discrimination, Mr. Fiedler and other unnamed members of the ERC will continue to be excluded from enjoying on an equal basis the goods and services offered by Defendant's hotels that they would otherwise patronize." (Compl. ¶ 22.)

These allegations do not even come close to establishing that any other ERC members have standing to bring a Title III action against Hilton in their own right. First, the most basic problem is that the Complaint does not differentiate between or identify any specific members. As discussed <u>supra</u> at 23-27, the standing analysis requires the court to examine the standing of <u>individual members</u>. Second, there is no allegation that any ERC member encountered any alleged accessibility barriers at a Hilton hotel. (The Complaint merely states that ERC supposedly found violations at certain Hilton-branded hotels as part of its investigation.) (Compl. ¶ 14-18.) Third, there is no allegation that any ERC member has any concrete, specific, or imminent plan to visit any Hilton hotel in the future. Fourth, there is no allegation that any particular ERC member has knowledge of any accessibility barriers at a particular hotel. Fifth, there is no allegation that, but for the knowledge of accessibility barriers at a particular hotel, an ERC member would patronize that hotel in the imminent future. Sixth, there is not even an allegation about where particular members live, which might be relevant to the question of whether they would actually be in a position to patronize a particular hotel. In short, there is no allegation to support the inference that any particular member of ERC is likely to suffer an imminent future harm that confers standing to sue for injunctive relief.

With regard to the unnamed members' standing to sue under the DCHRA, the Complaint contains no allegation that any particular member of ERC (1) has ever encountered an alleged accessibility barrier at a D.C. hotel; (2) has knowledge of accessibility barriers at any particular D.C. hotel; or (3) would patronize a D.C. hotel in the near future but for the knowledge of the alleged barriers. Because the Complaint fails to allege facts to establish that any ERC member has been injured by a hotel that is subject to the DCHRA, no such member has standing on which ERC can base its representational standing for the DCHRA claim.

### c.    ERC lacks standing to sue on behalf of its members for monetary damages under the DCHRA.

In <u>Telecommunications Research & Action Ctr. v. Allnet Communications Services, Inc.</u>, 806 F.2d 1093, 1095 (D.C. Cir. 1986), the D.C. Circuit stated that "[w]hile the Supreme Court has not yet confronted and decided the issue, lower federal courts have consistently rejected association assertions of standing to seek monetary, as distinguished from injunctive or declaratory, relief on behalf of the organization's members."  The Court then held that the association in that case did not have standing to seek monetary relief for its members even though the alleged injury (members being overcharged for services) required no individualized proof.  <u>Id.</u>  <u>See also</u> <u>Long Term Care Pharmacy Alliance</u>, 498 F. Supp. 2d at 193 (association had no standing to seek money damages for members).

ERC has no standing to bring this action on behalf of its members for compensatory damages because if liability is established, such compensatory damages would be different for each member and would have to be proven by reference to facts surrounding individualized incidents of discrimination.  <u>See</u> <u>Clark</u>, 213 F.R.D. at 212 (organization had no standing to seek damages for members under various state disability laws); <u>Boemio v. Love's Rest.</u>, 954 F. Supp. 204, 208 (S.D. Cal. 1997) (examining facts and circumstances specific to plaintiff's encounter with an accessibility barrier to hold that he was only entitled to the $1,000 statutory minimum damages under California law).

### B.    Plaintiffs lack standing to challenge the legality of Hilton's website.

Plaintiffs allege that "[t]he Hilton website, at <u>www.hilton.com</u>, contains inaccessible features, and does not comply with website accessibility guidelines."  (Hilton assumes that Plaintiffs are claiming that there are features that are not accessible to persons who are blind or who have a vision impairment.)  (Compl. ¶ 19.)  This is the only reference to the website in the

entire Complaint, and Plaintiffs do not specifically allege that the website violates the ADA or the DCHRA.  However, to the extent that Plaintiffs are asserting such a claim, it must be dismissed because neither of them has standing to challenge the accessibility of the website.

First, the Complaint does not allege that Mr. Fiedler or any other member of ERC is either blind or visually-impaired.  Plaintiffs have no standing to challenge accessibility barriers that are unrelated to their disability for the obvious reason that they cannot be injured by such barriers.  See, e.g., Steger, 228 F.3d at 893 (blind plaintiff did not have standing to seek relief for ADA violations that do not affect the blind); Ass'n for Disabled Americans, 2001 WL 1112109, at *21 (plaintiff with quadriplegia had no standing to sue for alleged barriers related to a visual or hearing impairment); see also Lewis, 518 U.S. at 357.  Because there is no allegation that Mr. Fiedler is blind, there is no basis to conclude that Mr. Fiedler was injured by any allegedly inaccessible features on the website.  Likewise, as no member of ERC is alleged to be blind, and no blind member is alleged to have used or attempt to use the website, ERC cannot assert that it is representing the interests of one of its blind members who could not use the website.

Second, ERC has not alleged that it has had to divert any of its resources to counsel any members regarding Hilton's website.  To the extent that ERC expended any resources to test the website (an allegation that is not made in the Complaint), such an expenditure has been held not to confer standing in the D.C. Circuit.  See BMC Marketing, 28 F.3d at 1276-77.

Third, the single sentence allegation in the Complaint about the website stating that it has unspecified "inaccessible features" that do not comply with unspecified "website accessibility guidelines" is simply not sufficient to state a claim under the ADA.  "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'  Factual allegations must be enough to raise a right to relief above the speculative level."  Bell

Atl., 127 S. Ct. at 1964.  The Complaint contains <u>no</u> factual allegations at all about how the website is allegedly inaccessible.  A statement that the website has "inaccessible" features is a legal conclusion couched as a factual allegation that cannot withstand a motion to dismiss.

> **C.**    **If the Court is not inclined to dismiss the Complaint, limited discovery relating to Plaintiffs' standing should be ordered to determine whether the Court has jurisdiction over Plaintiffs' claims and, if so, the proper scope of this lawsuit.**

As the parties invoking federal jurisdiction, Plaintiffs have the burden of establishing that there is a case or controversy over which this Court has jurisdiction.  Lujan, 504 U.S. at 560. The foregoing discussion makes plain that they have not met this burden.  Even under the most liberal interpretation of the Complaint, there is simply no basis for the Court to conclude that the Plaintiffs have been harmed by conditions existing at 2,854 Hilton hotels in the United States based on the allegations in the Complaint.  Indeed, it is impossible to tell on the face of the Complaint which, if any, hotels actually caused Plaintiffs or any members of ERC harm because Plaintiffs have omitted such facts.  To the extent that ERC claims that it had to divert resources to counseling its members as a result of "discrimination" at Hilton hotels, ERC has not identified which hotels resulted in the counseling, or how much counseling was even involved.  ERC claims that its members have been harmed, but has chosen not to provide any information about which members were harmed and what conditions at which hotels allegedly caused them harm.

If the Court does not dismiss Plaintiffs' claims, it should order that limited discovery into plaintiff's standing take place first so that the Court can obtain the answer to the basic question that the Complaint fails to address:  What hotels, if any, allegedly caused ERC and its members injury and are likely to cause them injury in the imminent future?  The answer to this question will dictate the scope of this case and the limits of Plaintiffs' standing.  The hotels that are identified in the Complaint do not answer this question because they are merely hotels that ERC

decided to investigate, not hotels that caused or are likely to cause ERC and its members an injury in fact.

Merely allowing Plaintiffs to amend their Complaint is not a desirable option for several reasons. First, it would not necessarily provide the clarity necessary to define the boundaries of this lawsuit, depending on how Plaintiffs restyle their allegations. They might, for example, allege one example of a hotel that had conditions that harmed a specific member and then simply refer generally to other hotels that harmed other unspecified members. In that instance, the scope of this lawsuit would still be unclear and Court would undoubtedly have to resolve disputes about the proper scope of discovery. Second, an amendment would likely result in yet another motion to dismiss, which, if denied, would be followed by a motion for summary judgment after discovery. All of these steps can be avoided if the Court first orders discovery to take place on the issue of standing, and then rules on a motion for summary judgment on whether Plaintiffs have standing to sue.

   **D.    Plaintiff Marc Fiedler's ADA claim also must be dismissed under Fed. R. Civ. P. 12(b)(6) and 12(b)(7).**

As set forth above, the Complaint only identifies one Hilton hotel that Mr. Fiedler allegedly had an intent to visit: The Hilton Oceanfront Resort located in South Carolina. Thus, to the extent that Mr. Fiedler has a claim under the ADA, it would limited to this particular hotel. Lewis, 518 U.S. at 352, 357. However, Mr. Fiedler's claim with regard to this hotel must be dismissed because it fails to state a claim under the ADA. The only condition at the Hilton Oceanfront Resort that allegedly caused Mr. Fiedler injury was the lack of an accessible ocean view room. As discussed in Section IV.F. infra, the alleged lack of an accessible ocean view room does not violate the ADA because the statute does not require facilities built before January 26, 1993 to disperse accessible rooms across various room categories. The fact that ERC

allegedly conducted an investigation and identified other alleged barriers to accessibility at this hotel cannot be a basis for Mr. Fiedler's ADA claim because there is no allegation that he ever encountered or even has knowledge of such supposed barriers and has been deterred from staying at this hotel as a result.

Mr. Fiedler's claim with regard to the Hilton Oceanfront Resort also must be dismissed for failure to name an indispensable party.  See Fed. R. Civ. P. 12(b)(7).  As discussed in Section IV.E. below, the franchisee that operates the Hilton Oceanfront Resort is an indispensable party over which the Court has no personal jurisdiction.  Moreover, the individual units at this hotel are owned by numerous individual owners whose property interests would clearly be affected by an order to make oceanview units accessible.  Accordingly, Mr. Fiedler's and ERC's claims relating to this hotel should be dismissed under Fed. R. Civ. P. 19(b).

> **E.    To the extent Plaintiffs are seeking injunctive and other relief for hotels that are not owned by Hilton, their claims must be dismissed under Fed. R. Civ. P. 12(b)(7) because Plaintiffs have failed to join the hotel owners who are indispensable parties.**

There are 2,854 hotels in the United States operating under the Hilton family brands. (Raynor Decl. ¶ 2.)  Of those, only 45 are owned by Hilton.  Id.  Three hundred and forty-six hotels are owned by third parties but operated by Hilton under management agreements (the "Managed Hotels").  Id.  The remaining 2,463 Franchised Hotels are owned and operated by franchisees whose only relationship to Hilton is governed by a license agreement.  Id.  The Complaint seeks, among other things, injunctive relief from this Court ordering Hilton "to comply with all applicable sections of the ADA as to all hotel properties owned or operated by

Hilton."[7]  As set forth below, even if the Court determines that Plaintiffs have standing to bring

this action, it should dismiss Plaintiffs' claims to the extent that they relate to hotels that are not

owned by Hilton because the owners of such hotels are necessary parties that have not been and,

in most cases, cannot be joined in this action.  Because there are so many hotels at issue, the

Court should first determine whether Plaintiffs even have standing to seek relief for any of these

facilities.  See discussion supra at IV.A.  If the Court determines that the Plaintiffs have standing

for some of these properties, Hilton should be given the opportunity to file a motion under Fed.

R. Civ. P. 19(b) with regard to these Franchised and Managed Hotels.

     With regard to the 24 hotels that have actually been named in the Complaint, the Court

can and should immediately remove 11 of them from this lawsuit under Fed. R. Civ. P. 19(b).

As shown below, the Franchised and Managed Hotels are not owned by Hilton, and their owners

are necessary parties under Rule 19 over whom the Court does not have personal jurisdiction.

     **1.**        **The hotel owners are necessary parties under Fed.R. Civ.P. 19(a).**

     "Under FED.R.CIV.P. 19, whether a party is indispensable for a just adjudication

requires a determination regarding whether the absent party is necessary to the litigation; if so,

whether the absent party can be joined in the litigation; and if joinder is infeasible, whether the

lawsuit can nevertheless proceed 'in equity and good conscience.'"  Kickapoo Tribe of Indians v.

Babbitt, 43 F.3d 1491, 1494 (D.C. Cir. 1995).  An absent party is necessary to a litigation under

Rule 19 if "(1) in [the party's] absence complete relief cannot be accorded among those already

parties, or (2) [the party] claims an interest relating to the subject of the action and is so situated

that the disposition of the action in [the party's] absence may (i) as a practical matter impair or

---

     [7]  Hilton presumes that Plaintiffs are limiting their relief to hotels located in the United States but reserves the right to supplement its motion to dismiss any claims relating to hotels outside of the United States if this assumption is incorrect.

impede [the party's] ability to protect that interest . . . ." Id. at 1495. Both of these circumstances are present in this case.

### a.    Complete relief cannot be accorded without the Franchised Hotel owners.

Plaintiffs are seeking, inter alia, an injunction from this Court ordering compliance with all applicable sections of the ADA at all hotels owned or operated by Hilton. (Compl. at 11.) If Plaintiffs prevail and are able to prove that accessibility barriers exist that violate the ADA and/or the DCHRA, such an injunction would entail the removal of accessibility barriers and/or the creation of accessible rooms in different room categories. (Id. ¶¶ 6-11, 13-18.) Hilton has no authority to make physical changes to any Franchised Hotels because it neither owns nor manages them. (Raynor Decl. ¶ 4.) Although the franchise agreements require a franchisee owner to comply with the ADA and other applicable laws, Hilton's only recourse if a franchisee owner chooses not to comply is to terminate the franchise agreement. Id.

### b.    The disposition of the case in the absence of the Franchised Hotel and Managed Hotel owners will impair their ability to protect their property interests.

The owners of the Franchised Hotels and Managed Hotels hold a valuable ownership interest in their hotels. That interest would be impaired by any order from this Court mandating the removal of alleged accessibility barriers and creation of new accessible rooms in different room categories. Physical changes to the hotels to improve their accessibility would, inter alia (1) change the appearance and other physical aspects of the hotel; (2) possibly result in a decrease in the total number of rooms at the hotels;[8] and (3) impose substantial costs that must be borne solely by these owners (Raynor Decl. ¶ 3).

---

[8]    The dispersion of accessible hotel rooms sought by Plaintiffs could result in the decrease in the overall number of hotel rooms in a facility. For example, a hotel may not have

An order from the Court requiring physical changes to the hotels would also affect a Franchised Hotel owner's legal interest in its franchise agreement with Hilton.  If the Court were to issue an injunction requiring Hilton to use its franchise agreements as a tool to force franchisees to make its hotels more accessible, the franchisees would be given a Hobson's choice of either incurring significant compliance costs or losing their valuable contractual rights under the agreement.  Both of these possibilities are detrimental to the owners' property interest. Furthermore, the Franchised Hotel and Managed Hotel owners cannot necessarily rely on Hilton to adequately defend their interests because, under both the franchise and management agreements, Hilton has no responsibility for any costs associated with ADA compliance or any other changes to the hotels.  (Raynor Decl. ¶¶ 3-4.)  Under these agreements, Hilton also has a right to indemnification for any liability resulting from this lawsuit.  (Id. ¶¶ 3, 5.)  Hilton also would not suffer the direct consequences of an owner's or franchisee's loss of selling space which could result from having to create accessible rooms in different room classes in pre-1993 hotels.

The courts have made clear under similar circumstances that an entity is a necessary party.  See Kickapoo Tribe, 43 F.3d at 1491 (a party to a contractual relationship that was the subject of a litigation was a necessary party where the contractual relationship had fiscal and other effects on that party); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983) (parties to contract that was the subject matter of the lawsuit had an interest relating to the action and were necessary parties); Thompson v. Jiffy Lube Int'l, Inc., 505 F. Supp. 2d 907 (D. Kan. 2007) (franchisee was a necessary party in an action against the franchisor for violating a

---

any rooms that are large enough to accommodate two double beds and meet all accessibility requirements.  In such circumstances, the hotel would have join two rooms to create one accessible double room.

state consumer protection act, fraud and negligence based on events taking place at the franchisee's facility); Gillis v. McDonald's Corp., Civ. A. No. 91-7202, 1992 WL 236891, at *1-2 (E.D. Pa. Sept. 10, 1992) (holding that a franchisee was an necessary party in a tort action brought against the franchisor because it was unlikely that the plaintiffs could hold the franchisor liable for the injuries and because if the franchisor were to lose on the merits, it would have the right to seek indemnification from the franchisee); Hoytt v. Docktor Pet Ctr., Inc., No. 85 C 6850, 1986 WL 11619, at *3-4 (N.D. Ill. Oct. 10, 1986) (franchisee necessary party in a fraud action brought against franchisor because the plaintiff might not be able to obtain relief against the franchisor); Roberts v. Royal Atlantic Corp., 445 F. Supp. 2d 239, 247 (E.D.N.Y. 2006) (expressing concern that plaintiff's failure to name and serve "proprietary tenants" of resort units would limit the court's ability to grant relief in an ADA Title III action, but deciding the case on a different ground); Thompson v. Sand Cliffs Owners Ass'n, Inc., No. 3:96cv270/RV, 1998 WL 35177067, at *2 (N.D. Fla. Mar. 30, 1998) (noting that the court had dismissed under Fed. R. Civ. P. 19 the original ADA Title III complaint seeking changes to individual condominium sleeping units because the owners of such units had not been joined in the action); Clark, 213 F.R.D. at 230 (noting that court's decision not to certify a defendant class and subclass of owners or operators of McDonald's franchisees "has the effect of excluding from [the] litigation restaurants owned or operated by McDonald's franchisees ([except for the one franchisee named in the Complaint]) in the absence of their individual joinder as parties defendant." )

### 2.    Joinder of the hotel owners and franchisees is not possible in most instances.

Because the 346 owners of the Managed Hotels and the 2,463 owners of the Franchised Hotels are clearly necessary parties, the next step in the Court's analysis is whether these entities can be joined.  If joinder is infeasible, the court must determine whether the lawsuit can

nevertheless proceed "in equity and good conscience." Kickapoo Tribe, 43 F.3d at 1495; Fed. R. Civ. P. 19(b). Because of the thousands of potential parties at issue, and the fact that this entire lawsuit should be dismissed for want of standing, the Court should allow Hilton to demonstrate that the relevant owners/franchisees cannot be joined in this action after the standing question is decided and the universe of hotels at issue in this litigation has been determined by the Court. Proceeding in this fashion will avoid potentially unnecessary costs relating to the gathering of evidence relevant to the question of whether the Court has personal jurisdiction over thousands of necessary parties. At this time, however, the Court can and should, under Rule 19(b), dismiss Plaintiffs' claims as they relate to 11 of the 24 hotels named in the Complaint because Hilton has submitted evidence showing that the Court does not have personal jurisdiction over the owners of the Managed and Franchised Hotels.

None of the owners of the following Managed and Franchised Hotels are residents (i.e., either incorporated in or maintain their principal place of business) of Washington, D.C.: (1) the Hilton Oceanfront Resort in South Carolina (Decl. of David Tigges (Ex. 2) ¶ 3); (2) the Hilton San Diego Resort (Decl. of Michael Barnello (Ex. 3) ¶ 2); (3) The Hilton Boston Back Bay in Massachusetts (Decl. of Farooq Rehmatwala (Ex. 4) ¶ 3); (4) The Hilton Alexandria Mark Center in Virginia (Decl. of Gabe L. Finke (Ex. 5) ¶ 2); (5) the Hilton Dallas-Fort Worth Lakes Conference Center in Texas (Decl. of Julie Lubin (Ex. 10) ¶ 2); (6) the Glendale Hotel located in California (Decl. of Ronald Solotruk (Ex. 6) ¶ 2); (7) the Hilton Los Angeles Airport in California (Decl. of Sandra Murphy (Ex. 7) ¶ 3); (8) the Hilton Suites Oakbrook in Illinois (Decl. of Yvonne Jeziorski (Ex. 8) ¶ 3); (9) the Drake in Illinois (Decl. of Tom Loughlin (Ex. 9) ¶ 6); (10) the Palmer House Hilton in Illinois (Id. ¶ 2); and (11) the Hilton Rye Town in New York (Decl. of Farooq Rehmatwala (Ex. 4) ¶ 6). "To establish personal jurisdiction over a non-

resident, a court must . . . first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  GTE New Media Servs. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).

A review of the District of Columbia long-arm statute makes clear that none of the owners of these hotels fall within the statute's ambit.   Section 13-423(b) of the long-arm statute states that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."  Every act enumerated in Section 13-423 is an act that involves an activity that takes place in the District of Columbia, whether it be the transacting of business, the supply of services, or the causing of tortious injury.[9] Plaintiffs' claims with regard to these owners would be based on the existence of alleged architectural barriers in hotels located outside the District of Columbia.   Because the alleged violations of the ADA at these hotels took place outside of the District of Columbia, the Court cannot exercise personal jurisdiction over these owners under the D.C. long-arm statute. See, e.g., Bancoult v. McNamara, 214 F.R.D. 5, 12 (D.D.C. 2003) (court had no personal

_____

[9]   Section 13-423 states:

A District of Columbia court may exercise personal jurisdiction over a person. . . as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission inside the District of Columbia; (4) causing tortious injury in the District of Columbia by an act of or omission outside the District of Columbia. . . ; (5) having an interest in, using, or possessing real property in the District of Columbia; (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia. . . ; or (7) marital or parent and child relationship in the District of Columbia. . . .

D.C. Code § 13-423 (2001).

jurisdiction over non-resident defendant because the claims in the lawsuit did not arise from the defendant's transacting business, contracting to supply services, or causing tortious injury in the District of Columbia.)

Because the owners of 11 Managed and Franchised Hotels named in this lawsuit cannot be joined in this case because of a lack of personal jurisdiction, the Court must determine whether the Plaintiffs' claims relating to these hotels must be dismissed. Rule 19(b) states that the factors to be considered by the court include the following: First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties. Second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided. Third, whether a judgment rendered in the person's absence will be adequate; Fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. See Fed. R. Civ. P. 19(b).

Each of these factors supports dismissal of Plaintiffs' claims relating to these hotels. First, with respect to the Franchised Hotels, a judgment for the Plaintiffs in this case would result in either the franchisee incurring costs to make its hotel compliant with the ADA and the making of physical changes to a hotel, or Hilton terminating its franchise agreement. With respect to the Managed Hotels, a judgment for the Plaintiffs would result in retrofit costs that must be borne by the owner and physical changes to the property. Thus, the judgment unquestionably would be prejudicial to the owners. Second, the Court cannot structure its relief to lessen the prejudice to the owners of the Franchised or Managed Hotels because the ADA specifically requires that the Court include "an order to alter facilities to make such facilities readily accessible to and usable

by individuals with disabilities" if a violation is found.  42 U.S.C. § 12188(a)(2).  Third,

as discussed above, the relief ordered by the Court in the absence of the owners of the

Franchised Hotels would not be adequate because it would not necessarily result in

changes at the hotels to improve accessibility.  Fourth, there is no impediment to the

Plaintiffs' pursuit of a lawsuit against each owner and Hilton in a court that has personal

jurisdiction over all of them.

The foregoing analysis makes clear that the Court should dismiss Plaintiffs' claims as to

the 11 Managed and Franchised Hotels identified in the Complaint over whose owners the Court

has no personal jurisdiction.

> **F.    Plaintiffs' claim that hotels built for first occupancy prior to January 26, 1993 must have accessible rooms dispersed in different room classes or categories must be dismissed under Fed. R. Civ. P. 12(b)(6).**

Plaintiffs' claim that Hilton has violated the ADA by not dispersing its accessible rooms

in different room categories such as double rooms and rooms with views must be dismissed with

regard to all hotels built for first occupancy prior to January 26, 1993 ("Pre-1993 Facilities")

because neither the ADA nor the DCHRA requires such facilities to disperse their accessible

rooms.[10]  This legal question should be resolved immediately because it will impact the scope of

discovery.

Title III of the ADA begins with a general prohibition against discrimination.  It states:

"No individual shall be discriminated against on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation by any person who owns, leases (or leases to), or operates a

---

[10]    Of the 24 hotels named in the complaint, only four were built for first occupancy after January 26, 1993 (Raynor Decl. (Ex. 1) ¶ 6.)

place of public accommodation." 42 U.S.C. § 12182 (2006). Notwithstanding the "full and equal enjoyment" language, Congress clearly understood that facilities already in existence when the statute was passed should not be held to the same standard as those built after the Act's passage. Accordingly, the statute adopts different definitions of "discrimination" for facilities based on when they were built.[11] 42 U.S.C. §§ 12183(a)(1)-(2), (b)(2)(A)(iv) (2006). The ADA's statutory scheme makes clear that Congress did not intend to hold Pre-1993 Facilities to the same accessibility standards as those facilities constructed after the ADA's standards took effect.

The ADA directed the Department of Justice ("DOJ") to adopt regulations to implement the ADA, and to set forth standards for accessible design. The regulations are at 28 C.F.R. Part 36, and the specific standards are set out at Appendix A to Part 36. These standards are most commonly referred to as the ADA Accessibility Guidelines ("ADAAG"). In these regulations, the DOJ adopted the same approach of treating Pre-1993 Facilities differently than those constructed after January 26, 1993. The DOJ explained its approach in the Preamble to the regulations as follows:

---

[11]    For facilities constructed for first occupancy after January 26, 1993, the statute defines "discrimination" as a failure to design and construct [such facilities] that are "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is <u>structurally impracticable</u> to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under [the statute]." 42 U.S.C. § 12183(a)(1) (emphasis added). For facilities constructed prior to January 26, 1993 ("Pre-1993 Facilities"), the statute defines discrimination as a failure "make alterations in such a manner that, <u>to the maximum extent feasible</u>, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2) (emphasis added). The statute also defines "discrimination" to include "a failure to remove architectural barriers . . .where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Readily achievable barrier removal is defined by the ADA as "easily accomplishable and able to be carried out without much difficulty or expense," and applies to all facilities regardless of when they were built. 42 U.S.C. § 12181(9) (2006).

> In striking a balance between guaranteeing access to individuals with disabilities and recognizing the legitimate cost concerns of businesses and other private entities, the ADA establishes different standards for existing facilities and new construction. In existing facilities, which are the subject of Sec. 36.304, where retrofitting may prove costly, a less rigorous degree of accessibility is required than in the case of new construction and alterations (see Sec. 36.401 - 36.406) where accessibility can be more conveniently and economically incorporated in the initial stages of design and construction.

28 C.F.R. pt. 36, App. B at 700 (2007) (emphasis added); also compare 28 C.F.R. § 36.401 (2007) ("New Construction") with § 36.402 (2007) ("Alterations").

Section 9 of the ADAAG contains the accessibility requirements for "Accessible Transient Lodging." Section 9.1 contains five subsections, each setting out a specific requirement. Section 9.1.1 addresses the public use and common areas for such facilities. Section 9.1.2 sets out the number of mobility accessible rooms that must be in a lodging facility, and references Section 9.2 as the section that contains the specific features required in such an accessible room. Section 9.1.3 sets forth the number of rooms that must have features for persons with hearing impairments. Section 9.1.4 sets out the requirement that accessible rooms be dispersed among various classes of accommodations. And Section 9.1.5, entitled, "Alterations to Accessible Units, Sleeping Rooms, and Suites," addresses the requirements that apply when accessible rooms are created through alterations.

Thus, the ADAAG section that governs alterations to Pre-1993 Facilities is Section 9.1.5, and the DOJ Technical Assistance Manual (the "TA Manual") confirms this fact. It states:

> **III-7.7000 Alterations (ADAAG § 4.1.6).** Throughout ADAAG, there are numerous examples of areas where there are less stringent standards for alterations than for new construction. For instance –
> . . .
> 3) There are special less stringent requirements for alterations in many other areas, including sales and service counters (§7.2(1)), check-out aisles (§7.3(1)), hotels (§9.1.5), and homeless shelters (§9.5.2(2)).

TA Manual Section III-7.7000 (emphasis added).

Section 9.1.5 states, in its entirety:

> **9.1.5. Alterations to Accessible Units, Sleeping Rooms, and Suites.** <u>When sleeping rooms are being altered in an existing facility, or portion thereof, subject to the requirements of this section, at least one sleeping room or suite that complies with the requirements of 9.2 (Requirements for Accessible Units, Sleeping Rooms, and Suites) shall be provided for each 25 sleeping rooms, or fraction thereof, of rooms being altered until the number of such rooms provided equals the number required to be accessible with 9.1.2.</u> In addition, at least one sleeping room or suite that complies with the requirements of 9.3 (Visual Alarms, Notification Devices, and Telephones) shall be provided for each 25 sleeping rooms, or fraction thereof, of rooms being altered until the number of such rooms equals the number required to be accessible by 9.1.3.

ADAAG § 9.1.5 (emphasis added).  Section 9.1.5 only requires that accessible rooms that are created through the alterations process comply with Section 9.2, and nowhere in Sections 9.1.5 or 9.2 is there a requirement that such rooms be dispersed across various room classes, as Plaintiffs contend in this lawsuit.  The dispersion requirement is in Section 9.1.4 which is <u>not</u> referenced in Section 9.1.5.  Accordingly, Plaintiffs cannot point to any legal requirement that Pre-1993 Facilities that create accessible rooms through the alterations process must disperse those rooms across different room classes.[12]  Accordingly, Plaintiffs' claim that pre-1993 Facilities are required to disperse their accessible rooms should be dismissed.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs' claims should be dismissed in their entirety for lack of standing under Fed. R. Civ. P. 12(b)(1), failure to state a claim under Fed. R. Civ. P. 12(b)(6) as it pertains to the issue of dispersion, and failure to join an indispensable party under Fed. R. Civ. P. 12(b)(7) with regard to the 11 named hotels that are not owned by Hilton.

---

[12]   Plaintiffs also cannot argue that Hilton was required to disperse its accessible rooms as part of a continuing obligation to engage in readily achievable barrier removal.  The regulations explicitly state that:  "the requirements for barrier removal . . . shall not be interpreted to exceed the standards for alterations in subpart D of this part."  <u>See</u> 28 C.F.R. § 36.304(g) (2007).  As discussed, the alteration standard does not require dispersal of accessible rooms.  <u>See</u> ADAAG § 9.1.5.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

_____/s/_____
Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)

Lisa A. Krupicka (not admitted in D.C.)
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)

DATED:  April 3, 2008                Counsel for Defendant

CERTIFICATE OF SERVICE

We hereby certify that the foregoing Memorandum of Points and Authorities in Support

of Motion to Dismiss of Defendant Hilton Hotels Corporation was served electronically this 3rd

day of April, 2008 to Plaintiff's counsel:


Elaine Gardner
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
11 Dupont Circle, NW, Suite 400
Washington, D.C.  20036

A courtesy copy was served by regular mail on:

August J. Matteis, Jr., Esq.
Gilbert Randolph LLP
1100 New York Ave., NW, Suite 700
Washington, D.C. 20005


I further certify that Tabs A and B to the Memorandum of Points and Authorities in

Support of Motion to Dismiss of Hilton Hotels Corporation, which are being filed under seal,

have been served by regular mail on all of the attorneys identified above.


/s/
Minh N. Vu
D.C. Bar No. 444305

DC:1161808v6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EQUAL RIGHTS CENTER<br><br>and<br><br>MARC FIEDLER,<br>　　　　　　　　　Plaintiffs,<br><br>　　　*v.*<br><br>HILTON HOTELS CORPORATION,<br>　　　　　　　　　Defendant. | Civ. Action No. 1:07-cv-01528-JR |

**PROPOSED ORDER**

　　　　AND NOW, this ____ day of _____, 2008, upon consideration of Defendant

Hilton Hotels Corporations' ("Hilton") Motion to Dismiss the Complaint, it is

　　　　ORDERED, that Hilton's Motion is hereby granted in its entirety, and the

Complaint is hereby dismissed with prejudice.

Date: _____, 2008

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Proposed Order was served this 3rd day of April 2008, by electronic service, on the following:

> Elaine E. Gardner, Esq.
> Washington Lawyers' Committee for
> Civil Rights & Urban Affairs
> 11 Dupont Circle, NW, Suite 400
> Washington, D.C.  20036
>
> Attorney for Plaintiffs

A courtesy copy was served by regular mail on:

> August Matteis, Jr.
> Benjamin Davidson
> Gilbert Randolph LLP
> 1100 New York Avenue, NW
> Suite 700
> Washington, DC 20005
>
>
> Attorneys for Plaintiffs


_____/s/_____
Minh N. Vu
D.C. Bar No. 444305

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

               Plaintiffs,

     *v.*

HILTON HOTELS CORPORATION,

               Defendant.

Civ. Action No. 1:07-cv-01528-JR

## HILTON HOTELS CORPORATION'S INDEX OF EXHIBITS FILED IN SUPPORT OF ITS MOTION TO DISMISS

Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)

Lisa A. Krupicka (admitted pro hac vice)
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)

DATED:  April 3, 2008            Counsel for Defendant

## INDEX OF EXHIBITS

| EXHIBIT DESCRIPTION | EXHIBIT NUMBER |
|---|---|
| | |
| Declaration of Ted C. Raynor dated April 3, 2008 | 1 |
|     Hilton form management agreement (Confidential) **(FILED UNDER SEAL)** | 1(A) |
|     Hilton form franchise agreement (Confidential) **(FILED UNDER SEAL)** | 1(B) |
| Declaration of David J. Tigges dated April 3, 2008 | 2 |
| Declaration of Michael Barnello dated March 30, 2008 | 3 |
| Declaration of Farooq Rehmatwala dated April 1, 2008 | 4 |
| Declaration of Gabe L. Finke dated March 31, 2008 | 5 |
| Declaration of Ronald Solotruck dated March 31, 2008 | 6 |
| Declaration of Sandra Murphy dated March 27, 2008 | 7 |
| Declaration of Yvonne Jeziorski dated March 28, 2008 | 8 |
| Declaration of Tom Loughlin dated April 3, 2008 | 9 |
| Declaration of Julie Lubin dated April 3, 2008 | 10 |

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of Exhibits 1-10 and the Exhibit Index were served this 3rd day of April 2008, by electronic service, on the following:

> Elaine E. Gardner, Esq.
> Washington Lawyers' Committee for
> Civil Rights & Urban Affairs
> 11 Dupont Circle, NW, Suite 400
> Washington, D.C.  20036
>
> Attorney for Plaintiffs

A courtesy copy was served by regular mail on:

> August Matteis, Jr.
> Benjamin Davidson
> Gilbert Randolph LLP
> 1100 New York Avenue, NW
> Suite 700
> Washington, DC 20005

I further certify that Attachments A and B to the Raynor Declaration which are being filed under seal have been served by regular mail on all of the attorneys identified above.

> Attorneys for Plaintiffs

_____ /s/ _____
Minh N. Vu
D.C. Bar No. 444305

DC:1348694v1

Hilton Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

    Plaintiffs,

    Civ. Action No. 1:07-cv-01528-JR

    v.

HILTON HOTELS CORPORATION,

    Defendant.

## DECLARATION OF TED C. RAYNOR

I, Ted C. Raynor, hereby declare as follows based on my personal knowledge:

1.    I am the Vice President and Senior Counsel for Hilton Hotels Corporation ("Hilton"). I have knowledge of the information set forth in this declaration in my position at Hilton, and am submitting this declaration on behalf of Hilton in support of its Motion to Dismiss.

2.    There are 2854 hotels in the United States that operate under a Hilton Family brand. Of 2854 hotels, 45 are owned by Hilton, 346 are owned by independent third party entities and operated by Hilton (the "Managed Hotels"), and 2463 are owned and operated by independent third party entities pursuant to franchise license agreements with Hilton (the "Franchised Hotels").

3.    The owner(s) of each Managed Hotel and Hilton are parties to a management agreement which sets forth the terms of their relationship. Although the

terms of each management agreement vary from hotel to hotel, there are certain terms common to every management agreement. First, the hotel owners must pay for all costs relating to any physical alterations to the Managed Hotel. Thus, if changes must be made to a Managed Hotel to improve its accessibility to persons with disabilities, the costs associated with such activities would be borne by the owner. In addition, the owner(s) of the Managed Hotels must indemnify Hilton for any claims resulting from the violation of any legal requirements applicable to the hotel, such as those imposed by the ADA. Attached at Tab A is a true and accurate copy of the form management agreement that Hilton has used for most of its Managed Hotels.

4.      As previously stated, Franchised Hotels are owned and operated by independent third party entities who have a franchise license agreement with Hilton or one of its subsidiaries. Among other things, the franchise license agreement gives the hotel owner/franchisee the right to operate the hotel under the Hilton brand and obligates it to comply with Hilton's brand standards. However, because Hilton neither owns nor manages such Franchised Hotels, Hilton has no authority to make physical changes to them. Although Hilton has the right to request that such changes be made, Hilton's only recourse if an owner/franchisee chooses not to comply is to terminate the franchise agreement.

5.      Under all of Hilton's franchise license agreements, the owner/franchisee of a Franchised Hotel is solely responsible for ensuring that the hotel is in compliance with all applicable laws, including the ADA. Thus, if changes must be made to a Franchised Hotel to improve its accessibility, the costs associated with such activities would be borne by the owner/franchisee. In addition, Hilton has the right to

indemnification for any liability resulting from any claim that a Franchised Hotel has violated any laws and regulations such as the ADA. A true and accurate copy of the form franchise license agreement that has been used for most of the Franchised Hotels is at Tab B.

6.    The Complaint references 24 Hilton branded hotels. The following chart identifies each hotel identified in the Complaint, its location, its ownership and management status, and the year in which it was opened:

| HOTEL NAME | ADDRESS | OWNERSHIP AND MANAGEMENT STATUS | DATE OPENED |
|---|---|---|---|
| Hilton San Diego Resort | 1775 East Mission Bay Drive, San Diego, CA | Franchised Hotel | 1965 |
| Hilton Washington Embassy Row | 2015 Massachusetts Avenue, Washington, DC | Franchised Hotel | 1996 |
| Hilton Oceanfront Resort | 23 Ocean Lane Hilton Head Island, SC | Franchised Hotel | 1992 |
| Hilton DFW Lakes Conference Center | 1800 Highway 26 East, Grapevine, TX | Franchised Hotel | 1983 |
| Hilton Alexandria Mark Center | 5000 Seminary Road, Alexandria, VA | Franchised Hotel | 1999 |
| Hilton Los Angeles North/Glendale | 100 West Glenoaks Blvd., Glendale, CA | Franchised Hotel | 1996 |
| Hilton Los Angeles Airport and Towers | 5711 West Century Blvd., Los Angeles, CA | Managed Hotel | 1983 |
| Hilton Washington | 1919 Connecticut Avenue, NW, Washington, DC | Managed Hotel | 1965 |
| Capitol Hilton | 1001 – 16th Street, NW, Washington, DC | Managed Hotel | 1943 |
| Hilton Suites Oakbrook | 10 Drury Lane, Oakbrook Terrace, IL | Managed Hotel | 1989 |
| The Drake | 140 East Walton, Chicago, IL | Managed Hotel | 1980 |
| The Palmer House Hilton | 17 East Monroe, Chicago, IL | Managed Hotel | 1925 |
| Rye Town Hilton | 699 Westchester Avenue, Rye Brook, NY | Managed Hotel | 1973 |

| HOTEL NAME | ADDRESS | OWNERSHIP AND MANAGEMENT STATUS | DATE OPENED |
|---|---|---|---|
| Hilton Boston Back Bay | 40 Dalton Street, Boston, MA | Managed Hotel Franchised Hotel | 1982 |
| Hilton Oakland Airport | One Hegenberger Road, Oakland, CA | Hilton Owned | 1970 |
| Hilton San Francisco | 333 O'Farrell Street, San Francisco, CA | Hilton Owned | 1964 |
| Hilton O'Hare Airport | O'Hare International Airport, PO Box 66414, Chicago, IL | Hilton Owned | 1992 |
| Chicago Hilton | 720 South Michigan Avenue, Chicago, IL | Hilton Owned | 1927 |
| Hilton Boston Logan Airport | One Hotel Drive, Boston, MA | Hilton Owned | 1999 |
| Hilton Short Hills | 41 JFK Parkway, Short Hills, NJ | Hilton Owned | 1988 |
| Hilton New York | 1335 Avenue of the Americas, New York, NY | Hilton Owned | 1963 |
| The Waldorf-Astoria | 100 East 50th Street, New York, NY | Hilton Owned | 1931 |
| Hilton McLean Tyson's Corner | 7920 Jones Branch Drive, McLean, VA | Hilton Owned | 1987 |
| Hilton Seattle Airport | 17620 Pacific Highway South, Seattle, WA | Hilton Owned | 1961 |

7.    Hilton does not own or operate the Hilton DFW Lakes Executive Conference Center located at 1800 Highway 26 East, Grapevine, Texas 7605. According to Hilton's records, this hotel is owned by Perini-Grapevine, Inc. ("Perini"), a Delaware corporation which maintains its principle place of business at 5383 Hollister Avenue, Santa Barbara, California.    Hilton Inns, Inc., a subsidiary of Hilton, is a party to a franchise agreement with Perini relating to this hotel.  Perini, on the one hand, and Hilton Hotels Corporation and Hilton Inns, Inc., on the other hand, are separate entities with no common ownership.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April 3, 2008

Ted C. Raynor
**Vice President and Senior Counsel**

ATTACHMENT A TO THE TED RAYNOR DECLARATION HAS BEEN FILED UNDER SEAL.

xxx

ATTACHMENT B TO THE TED RAYNOR DECLARATION HAS BEEN FILED UNDER SEAL.

Hilton Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

                Plaintiffs,

          *v.*

HILTON HOTELS CORPORATION,

                Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF DAVID J. TIGGES

I, David J. Tigges, declare as follows based on my personal knowledge:

1.     I am legal counsel and the registered agent for Atlantic Resort Managers, Inc. ("Atlantic"). I am submitting this Declaration on behalf of Atlantic solely for the purpose of providing facts relevant to Hilton Hotels Corporation's Motion to Dismiss in the above-captioned case. By submitting this Declaration, neither Atlantic nor I consent to the Court's exercise of personal jurisdiction over us and do not waive any objections that we may have concerning personal or subject matter jurisdiction.

2.     Atlantic is the agent for each of the owners of the 324 individual condominium units that comprise the Hilton Oceanfront Resort located at 23 Ocean Lane, Hilton Head Island, South Carolina 29928. These condominium units are owned by individual owners.

3.    Atlantic is a South Carolina corporation which maintains its principal place of business at 23 Ocean Lane, Hilton Head Island, South Carolina 29928. Atlantic only conducts business in South Carolina and conducts no business in Washington, D.C. Atlantic operates the Hilton Oceanfront Resort pursuant to a franchise license agreement with Hilton Inns, Inc., a subsidiary of Hilton Hotels Corporation.

4.    Atlantic, on the one hand, and Hilton Hotels Corporation and Hilton Inns, Inc., on the other hand, are separate entities with no common ownership.


I declare under penalty of perjury that the foregoing is true and correct.


Date: April 3, 2008

_____
David J. Tigges

Hilton Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

     Plaintiffs,

   *v.*

HILTON HOTELS CORPORATION,

     Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF MICHAEL D. BARNELLO

  I, Michael D. Barnello, declare as follows based on my personal knowledge:

  1.  I am the President of LHO Mission Bay Rosie Lessee, Inc. ("LHO"). I am submitting this Declaration on behalf of LHO solely for the purpose of providing facts relevant to Hilton Hotels Corporation's Motion to Dismiss in the above-captioned case. By submitting this Declaration, neither LHO nor I consent to the Court's exercise of personal jurisdiction over us and do not waive any objections that we may have concerning personal or subject matter jurisdiction.

  2.  LHO is the lessee of the Hilton San Diego Resort located at 1775 East Mission Bay Drive, San Diego, CA 92109. LHO is a Delaware Corporation which maintains its principal place of business at 3 Bethesda Metro Center, Suite 1200, Bethesda, MD 20814. LHO operates

the Hilton San Diego Resort under a franchise license agreement with HLT Existing Franchise

Holding, LLC as assignee of Hilton Inns, Inc., a subsidiary of Hilton Hotels Corporation.

    3.      LHO, on the one hand, and Hilton Hotels Corporation and Hilton Inns, Inc., on

the other hand, are separate entities with no common ownership.


    I declare under penalty of perjury that the foregoing is true and correct.


Date: March 30, 2008

                                   Michael D. Barnello

Hilton Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

              Plaintiffs,

     *v.*

HILTON HOTELS CORPORATION,

              Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF FAROOQ REHMATWALA

I, Farooq Rehmatwala, declare as follows:

1.    I am the Area Vice President for Hilton Hotels Corporation ("Hilton") who is responsible for Hilton's relationship with HHC TRS OP LLC. ("HTO") and Rye Town Tenant Corporation ("Rye Town").

2.    HTO is the owner of the Hilton Boston Back Bay hotel located at 40 Dalton Street, Boston, Massachusetts 02115. HTO and a Hilton subsidiary, Hilton Management LLC, are parties to a management agreement pursuant to which Hilton Management LLC manages the Hilton Boston Back Bay for HTO.

3.    HTO is a Delaware Limited Liability Company which maintains its principal place of business at 8405 Greensboro Drive Suite 500, McLean, Virginia 22102. I know this

information because of my responsibilities relating to HTO's hotel. In addition, Hilton has verified the accuracy of this information.

4.    HTO and Hilton are separate entities with no common ownership.

5.    Rye Town is the owner of the Hilton Rye Town hotel located at 699 Westchester Avenue, Rye Brook, New York 10573. Rye Town and a Hilton subsidiary, Hilton Management LLC, are parties to a management agreement pursuant to which Hilton Management LLC manages the Hilton Rye Town for Rye Town.

6.    Rye Town is a Delaware Corporation which maintains its principal place of business at 699 Westchester Avenue, Rye Brook, New York 10573. I know this information because of my responsibilities relating to Hilton Rye Town. In addition, Hilton has verified the accuracy of this information.

7.    Rye Town and Hilton are separate entities with no common ownership.


I declare under penalty of perjury that the foregoing is true and correct.

Date: April ___/___, 2008

Farooq Rehmatwala

Hilton Exhibit 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

                Plaintiffs,

      *v.*

HILTON HOTELS CORPORATION,

                Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF GABE L. FINKE

I, Gabe L. Finke, declare as follows based on my personal knowledge:

1.      I am the Principal Correspondent of Seminary Road Hotel Associates, LLC. ("Seminary").  I am submitting this Declaration on behalf of Seminary solely for the purpose of providing facts relevant to Hilton Hotels Corporation's Motion to Dismiss in the above-captioned case.  By submitting this Declaration, neither Seminary nor I consent to the Court's exercise of personal jurisdiction over us and do not waive any objections that we may have concerning personal or subject matter jurisdiction.

2.      Seminary is the owner of the Hilton Alexandria Mark Center hotel located at 5000 Seminary Road, Alexandria, VA 22301.  Seminary is a Delaware limited liability company which maintains its principal place of business at 1050 17th Street, Suite 1200, Denver, Colorado

80265. Seminary operates the Hilton Alexandria Mark Center hotel pursuant to a franchise license agreement with HLT Existing Franchise Holding, LLC as assignee of Hilton Inns, Inc., a subsidiary of Hilton Hotels Corporation.

3.     Seminary, on the one hand, and Hilton Hotels Corporation and Hilton Inns, Inc., on the other hand, are separate entities with no common ownership.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 31, 2008                    _____
                                        Gabe L. Finke

Hilton Exhibit 6

.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,
              Plaintiffs,

    v.

HILTON HOTELS CORPORATION,
              Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF RONALD J. SOLOTRUK

I, Ronald J. Solotruk, declare as follows based on my personal knowledge:

1.     I am the Principal Correspondent of AP/AIM Glendale Hotels TRS, LLC ("AP/AIM"). I am submitting this Declaration on behalf of AP/AIM solely for the purpose of providing facts relevant to Hilton Hotels Corporation's Motion to Dismiss in the above-captioned case. By submitting this Declaration, neither AP/AIM nor I consent to the Court's exercise of personal jurisdiction over us and do not waive any objections that we may have concerning personal or subject matter jurisdiction.

2.     AP/AIM is the owner of the Hilton Los Angeles North/Glendale Hotel located at 100 West Glenoaks Boulevard, Glendale, California 91202. AP/AIM is a Delaware limited liability company which maintains its principal place of business at 2 Manhattanville Road,

Purchase, New York 10577.  AP/AIM  operates the Hilton Los Angeles North/Glendale Hotel

pursuant to a franchise license agreement with HLT Existing Franchise Holding, LLC as

assignee of Hilton Inns, Inc., a subsidiary of Hilton Hotels Corporation.

  3.  AP/AIM, on the one hand, and Hilton Hotels Corporation and Hilton Inns, Inc.,

on the other hand, are separate entities with no common ownership.

  I declare under penalty of perjury that the foregoing is true and correct.


Date: March 21, 2008

              _____
              Ronald J. Solotruk

- 2 -

Hilton Exhibit 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

                Plaintiffs,

      *v.*

HILTON HOTELS CORPORATION,

                Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF SANDRA MURPHY

I, Sandra Murphy, declare as follows based on my personal knowledge:

1.    I am the Area Vice President for Hilton Hotels Corporation ("Hilton") who is responsible for Hilton's relationship with Fortuna Enterprises, LP ("Fortuna").

2.    Fortuna is the owner of Hilton Los Angeles Airport hotel located at 5711 West Century Boulevard, Los Angeles, California 90045. Fortuna and a Hilton subsidiary, Hilton Management LLC, are parties to a management agreement pursuant to which the Hilton Management LLC manages the Hilton Los Angeles Airport for Fortuna.

3.    Fortuna is a Delaware Corporation which maintains its principal place of business at 5711 West Century Blvd., Los Angeles, California 90045. I know this information because of

my responsibilities relating to Hilton Los Angeles Airport.  In addition, Hilton has verified the accuracy of this information.

4.        Fortuna and Hilton are separate entities with no common ownership.


I declare under penalty of perjury that the foregoing is true and correct.


Date: March _27_, 2008

Sandra Murphy

Hilton Exhibit 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

               Plaintiffs,

     v.

HILTON HOTELS CORPORATION,

               Defendant.

Civ. Action No. 1:07-cv-01528-JR

## DECLARATION OF YVONNE JEZIORSKI

I, Yvonne Jeziorski, declare as follows based on my personal knowledge:

1.    I am the Area Vice President for Hilton Hotels Corporation ("Hilton") who is responsible for Hilton's relationship with Oakbrook Hilton Suites and Garden Inn LLC ("Oakbrook").

2.    Oakbrook is the owner of Hilton Suites Oakbrook Terrace hotel located at 10 Drury Lane, Oakbrook Terrace, Illinois 60181. Oakbrook and a Hilton subsidiary, Hilton Management LLC, are parties to a management agreement pursuant to which the Hilton Management LLC manages the Hilton Suites Oakbrook Terrace hotel for Oakbrook.

3.    Oakbrook is an Illinois Corporation which maintains its principal place of business at 10 Drury Lane, Oakbrook Terrace Illinois 60181. I know this information because of

{000130-017928 M0016353.DOC; 1}

my responsibilities relating to the Hilton Suites Oakbrook Terrace. In addition, Hilton has verified the accuracy of this information.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 28 , 2008

Yvonne Jeziorski

Hilton Exhibit 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

     Plaintiffs,

  *v.*

HILTON HOTELS CORPORATION,

     Defendant.

Civ. Action No. 1:07-cv-01528-JR

## <u>DECLARATION OF TOM LOUGHLIN</u>

 I, Tom Loughlin, declare as follows based on my personal knowledge:

 1. I am the Area Vice President for Hilton Hotels Corporation ("Hilton") who is responsible for Hilton's relationship with Thor Palmer House Hotel ("TPHH") and WWL DHotel Investors, LLC ("WWL").

 2. TPHH is the owner of The Palmer House Hilton located at 17 E. Monroe Street Chicago, Illinois 60603. TPHH and a Hilton subsidiary, HLT Palmer LLC are parties to a management agreement pursuant to which the HLT Palmer LLC manages The Palmer House Hilton for TPHH.

 3. TPHH is a Delaware Corporation which maintains its principal place of business at 25 W. 39th Street, New York, New York 10018. I know this information because of my

responsibilities relating to TPHH's hotel. In addition, Hilton has verified the accuracy of this information.

4.    TPHH and Hilton are separate entities with no common ownership.

5.    WWL is the owner of The Drake hotel located at 140 East Walton Place, Chicago, Illinois 60610. WWL and a Hilton subsidiary, HLT Drake LLC are parties to a management agreement pursuant to which the HLT Drake LLC manages The Drake for WWL.

6.    WWL is a Delaware Corporation which maintains its principal place of business at 430 West Erie Street, Suite 501 Chicago, Illinois 60610. I know this information because of my responsibilities relating to The Drake hotel. In addition, Hilton has verified the accuracy of this information.

7.    WWL and Hilton are separate entities with no common ownership.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April 3, 2008

Thomas J. Loughlin

Hilton Exhibit 10

.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER

and

MARC FIEDLER,

                  Plaintiffs,

       *v.*

HILTON HOTELS CORPORATION,

                  Defendant.

Civ. Action No. 1:07-cv-01528-JR

**DECLARATION OF JULIE LUBIN**

    I, Julie Lubin, declare as follows based on my personal knowledge:

    1.    I am the Principal Correspondent of Perini Grapevine, Inc. ("Perini"). I am submitting this Declaration on behalf of Perini solely for the purpose of providing facts relevant to Hilton Hotels Corporation's Motion to Dismiss in the above-captioned case. By submitting this Declaration, neither Perini nor I consent to the Court's exercise of personal jurisdiction over us and do not waive any objections that we may have concerning personal or subject matter jurisdiction.

    2.    Perini is the owner of the Hilton DFW Lakes Executive Conference Center hotel located at 1800 Highway 26 East, Grapevine, Texas 76051. Perini is a Delaware Corporation which maintains its principal place of business at 5383 Hollister Avenue, Suite 240, Santa

Barbara, CA 93111.    Perini operates the Hilton DFW Lakes Executive Conference Center pursuant to a franchise license agreement with HLT Existing Franchise Holding, LLC as assignee of Hilton Inns, Inc., a subsidiary of Hilton Hotels Corporation.

3.    Perini, on the one hand, and Hilton Hotels Corporation and Hilton Inns, Inc., on the other hand, are separate entities with no common ownership.


I declare under penalty of perjury that the foregoing is true and correct.


Date:  March 31, 2008                          _Julie Lubin_____
                                               Julie Lubin