**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER, et al.,

Plaintiffs,

*v.*

HILTON HOTELS CORPORATION,

Defendant.

Civ. Action No. 1:07-cv-01528-JR

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
HILTON HOTELS CORPORATION'S MOTION TO DISMISS THE AMENDED
COMPLAINT**

Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)

Lisa A. Krupicka (admitted pro hac vice)
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)

DATED:  June 25, 2008

Counsel for Defendant
Hilton Hotels Corporation

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 3

    A.    Plaintiffs Lack Standing to Seek Injunctive Relief as to All Hilton Family
        Brand Hotels and The Hilton Central Reservation System Under The ADA
        And DCHRA ............................................................................................. 3

        1.    Plaintiffs Misstate The Legal Standards That Apply to A Motion To
               Dismiss For Lack Of Standing Under Fed. R. Civ. P. 12(b)(1) ................. 3

        2.    Plaintiffs Have Not Alleged Sufficient Facts To Establish Their
               Standing To Seek Nationwide Injunctive Relief As To All Hilton
               Family Brand Hotels And The Central Reservations System..................... 6

        3.    The Individual Plaintiffs Have Not Alleged Facts To Establish Their
               Standing To Seek Injunctive Relief As To Any Individual Hilton
               Family Brand Hotels. ............................................................................... 9

        4.    ERC Does Not Have Organizational Standing To Seek Injunctive
               Relief. ..................................................................................................... 11

               a.    ERC cannot avoid the prudential and statutory bar to its ADA
                        claim. ........................................................................................ 11

               b.    ERC's allegations of past injury to itself do not establish the
                        likelihood of imminent future harm required for injunctive relief.
                        .................................................................................................. 12

        5.    AAPD Does Not Have Organizational Standing To Seek Injunctive
               Relief. ..................................................................................................... 14

         6.    AAPD and ERC's Vague Allegations Do Not Establish Their
               Associational Standing to Represent the Interests of their Members. ...... 15

    B.    Plaintiffs Do Not Have Standing To Sue for Damages Under the DCHRA. ....... 17

    C.    The Managed and Franchised Hotel Owners Are Necessary and
        Indispensable Parties under Fed. R. Civ. P. 19(a). ............................................... 19

    D.    The ADA Does Not Require Hotels Constructed for First Occupancy Before
        January 26, 1993 To Disperse Accessible Rooms. .............................................. 23

III.  CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

Access 4 All, Inc. v. Absecon Hospitality Corp., 04-6060, 2006 WL 3109966 (D.N.J. Oct. 30, 2006) ...................................................................................................................6

Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc., 525 F.3d 8 (D.C. Cir. 2008).....................3

Am. Chemistry Council v. Dep't of Transp., 468 F.3d 810 (D.C. Cir. 2006)..............................15

Am. Immigration Lawyers Ass'n v. Reno, et al., 18 F. Supp. 2d 38 (D.D.C. 1998)....................16

Ass'n for Disabled Ams. v.Claypool Holdings, LLC, No. IP 00-0344-C-G/T, 2001 WL 1112109 (S.D. Ind. Aug. 6, 2001)...................................................................................10

Bacon v. City of Richmond, 386 F. Supp. 2d 700 (E.D. Va. 2005) .............................................10

Blake v. Prof'l Travel Corp., 768 A.2d 568 (D.C. 2001) ...........................................................18

Celano v. Marriott Int'l, Inc., No. 05-4004, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008).........6, 10

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) ........................................................................5

Clark v. Burger King, 255 F. Supp. 2d 334 (D.N.J. 2003) ...........................................................9

Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003) ...................................................11, 21

Dahlberg v. Avis Rent a Car Sys., 92 F. Supp. 2d 1091 (D. Colo. 2000) ...................................21

Doran v. 7 Eleven, Inc., 524 F.3d 1034 (9th Cir. 2008) .............................................................10

Equal Rights Ctr. v. Equity Residential, 483 F. Supp. 2d 482 (D. Md. 2007) ....................... 11-12

FW/PBS v. City of Dallas, 493 U.S. 215 (1990) ..........................................................................3

Fair Employment Council of Greater Washington Inc. v. BMC Mktg. Corp., 28 F.3d 1268 (D.C. Cir. 1984)..........................................................................................5, 7, 13

Gregory v. Melrose Group, No. Civ. A 03-2414, 2003 WL 22928805 (E.D. La. Dec. 8, 2003) ..............................................................................................................................10

Haase v. Sessions, 835 F.2d 902 (D.C. Cir. 1987) ..........................................................3-5, 8-10

Harris v. Del Taco, Inc., 396 F. Supp. 2d 1107 (C.D. Cal. 2005) ................................................6

Havens Realty v. Coleman, 455 U.S. 363 (1982).......................................................................13

Healy v. Beer Inst., Inc., 491 U.S. 324 (1989)...........................................................................18

Hoepfl v. Barlow, 906 F. Supp. 317 (E.D. Va. 1995).................................................................11

Holt v. Am. City Diner, Inc., No. CIV-05-1745, 2007 WL 1438489 (D.D.C. May 15, 2007) ...............................................................................................................................................6

Indep. Living Res. v. Oregon Arena, 982 F. Supp. 698 (D. Or. 1997).................................... 10-12

Kratzer v. Gamma Mgmt. Group, No. Civ. A. 04-6031, 2005 WL 2644996 (E.D. Pa. Oct. 12, 2005) .....................................................................................................................................6

Lewis v. Casey, 518 U.S. 343 (1996) .......................................................................................4

Liban v. Churchey Group II, L.L.C., 305 F. Supp. 2d 136 (D.D.C. 2004)...................................18

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................5, 7,9, 17

Matthews v. Automated Bus. Sys. & Servs., Inc., 558 A.2d 1175 (D.C. 1989)............................18

McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63 (1st Cir. 2003) ............................................11

Molski v. Mandarin Touch Rest., 385 F. Supp. 2d 1042 (C.D. Cal. 2005) ...................................6

Moreno v. G & M Oil Co., 88 F. Supp. 2d 1116 (C.D. Cal. 2000) ............................................11

Nat'l Coal. for Students with Disabilities v. Miller, 298 F. Supp. 2d 16 (D.D.C. 2002) ........ 15-16

Nat'l Taxpayers Union v. United States, 68 F.3d 1428 (D.C. Cir. 1995)....................................17

Nat'l Treasury Employees Union v. United States, 101 F.3d 1423 (D.C. Cir. 1996) ...................14

Natural Res. Def. Council v. EPA, 464 F.3d 1 (D.C. Cir. 2006)............................................ 16-17

Neff v. Am. Dairy Queen Corp., 58 F.3d 1063 (5th Cir. 1995)................................................ 21-22

Pub. Citizen v. FTC, 869 F.2d 1541 (D.C. Cir. 1989)............................................................ 16-17

Small v. Gen. Nutrition Cos., 388 F. Supp. 2d 83 (E.D.N.Y. 2005) ......................................10, 11

Spann v. Colonial Vill., Inc., 899 F.2d 24 (D.C.Cir. 1990)............................................................13

Steger v. Franco, 228 F.3d 889 (8th Cir. 2000) ............................................................................10

Thompson v. Sand Cliff Owners Ass'n, Inc., No. 3:96 CV 270/RV, 1998 WL 35177067 (N.D. Fla. Mar. 30, 1998) ............................................................................................................19

United States v. Days Inns, 997 F. Supp. 1080 (C.D. Ill. 1998)....................................................22

United States v. Days Inns, 22 F. Supp. 2d 612 (E.D. Ky. 1998)............................................ 21-22

United States v. Days Inns, 151 F.3d 822 (8th Cir. 1988) ........................................................ 21-22

Young v. Am. Dairy Queen Corp., 1994 WL 761233 (N.D. Tex. 1994) ................................ 21-22

## STATUTES

42 U.S.C. § 12133 ................................................................................................................... 12

42 U.S.C. § 12182(b)(1)(E) ................................................................................................... 12

42 U.S.C. § 12182(b)(2)(A)(iv) ............................................................................................... 8

42 U.S.C. § 12183(a)(1) .......................................................................................................... 8

42 U.S.C. § 12183(a)(2)(iv) ..................................................................................................... 8

42 U.S.C. § 12188(a)(1) ...................................................................................................... 11-12

D.C. Code § 2-1402.21(5) ...................................................................................................... 18

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 3, 25

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3, 25

Fed. R. Civ. P. 12(b)(7) ......................................................................................................... 25

Fed. R. Civ. P. 19(a) .............................................................................................................. 19

28 C.F.R. Part 36, App. A § 4.1.6 ......................................................................................... 24

28 C.F.R. Part 36, App. A § 9.1.4 ...................................................................................... 23-24

28 C.F.R. Part 36, App. A § 9.1.5 ...................................................................................... 23-24

28 C.F.R. Part 36, App. A § 9.2 ......................................................................................... 23-24

28 C.F.R. § 36.304(g) ............................................................................................................. 25

## I.    INTRODUCTION

Apparently unable to allege any facts to support this overreaching nationwide lawsuit for injunctive relief against 2,869 Hilton Family Brand[1] hotels, Plaintiffs instead rely on inflammatory and misleading rhetoric to try persuade this Court that it should disregard (1) its obligation to determine whether it has jurisdiction over this case, (2) the rights of absent third parties, and (3) the clear language of the ADA regulations.  Plaintiffs' claim that Hilton does not deny that any violations exist at its hotels is a perfect example of such rhetoric (Mem. of Points and Authorities in Opp'n to Hilton's Motion to Dismiss the Amended Compl. ("Opp'n") 1).  Hilton has clearly denied all such allegations in its Answer, but the merits of those allegations (as Plaintiffs surely know), are not the proper subject of a Motion to Dismiss.  Instead of engaging in diversionary tactics, Plaintiffs should instead focus on the legal principles that apply to the proceeding at hand.

Under these principles, litigants such as Plaintiffs may only seek injunctive relief when they are threatened with an <u>imminent</u> future harm that is caused by the defendant and can be redressed in the lawsuit.  This demonstration of Article III standing must be supported by specific allegations of fact even at the beginning of the case, and the nature and scope of the relief requested dictate the facts that must be alleged to establish standing.  Furthermore, prudential standing principles and the text of Title III of the ADA do not allow litigants to assert the rights of others, and also limit relief to individuals who have or are about to suffer disability discrimination.  The applicable legal principles also require the consideration of any harm to the rights of absent third parties and whether complete relief can be afforded without such parties, before allowing a case to proceed.

---

[1] Capitalized terms used in this brief were previously defined in Hilton's Memorandum of Points and Authorities in Support of its Motion to Dismiss dated May 9, 2008 ("Hilton Mem.").

As shown below, the application of these principles yields the following conclusions:

First, Plaintiffs do not have standing to seek injunctive and monetary relief as to the Hilton central reservation system or any Hilton Family Brand hotel, let alone all 2,869 hotels in the country. For example, notwithstanding ample opportunity to bolster their allegations, neither AAPD nor ERC has identified a single member who would visit a Hilton Family Brand hotel in the near future but for his or her knowledge of alleged accessibility barriers at that hotel. It is telling that ERC can only identify two people that it has ever had to counsel about alleged accessibility barriers at Hilton Family Brand hotels. If these facts are sufficient to establish these organizations' standing to seek <u>nationwide</u> injunctive relief against 2,869 hotels, then Article III's standing requirement has no meaning.

Plaintiffs' argument that the Court should disregard standing principles based on their nebulous assertion of a "policy" of discrimination (based on the alleged existence of architectural barriers) also has no merit where they have not and cannot allege that there is any commonality of architecture among these 2,869 hotels. The 2,869 hotels at issue are made up of nine very different brands consisting of architecturally-distinct hotels built over many years.

Second, the owners of the Franchised and Managed Hotels are necessary parties because any injunctive relief ordered against Hilton would harm their property interests. Furthermore, in the case of the 2,356 Franchised Hotels, complete relief is unlikely without the joinder of the Franchised Hotels because it is undisputed Hilton has no right to make changes to these properties. Most of them (including the 13 that submitted declarations) are also indispensable parties because this Court lacks personal jurisdiction over them. The Court cannot ignore this harm and its inability to grant complete relief in the case of the Franchised Hotels just because it might be inconvenient for Plaintiffs to bring lawsuits in jurisdictions where these owners can be sued. <u>There is no impediment to Plaintiffs bringing such lawsuits and there is no risk of</u>

inconsistent judgments because each case would deal with the alleged accessibility barriers specific to each hotel.

Third, Plaintiffs' attempt to manufacture a dispersion requirement for accessible rooms created through alterations of pre-1993 Facilities through a tortured interpretation of the regulations must be rejected in favor of a common sense reading.

## II.    ARGUMENT

### A.    Plaintiffs Lack Standing to Seek Injunctive Relief as to All Hilton Family Brand Hotels and The Hilton Central Reservation System Under The ADA And DCHRA.

#### 1.    Plaintiffs Misstate The Legal Standards That Apply to A Motion To Dismiss For Lack Of Standing Under Fed. R. Civ. P. 12(b)(1)

a.    Plaintiffs' position that they need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to establish their standing is incorrect (Opp'n 11). The standard cited by Plaintiffs from Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, 525 F.3d 8, 15 (D.C. Cir. 2008), applies to determine whether they have stated a claim under Fed. R. Civ. P. 12(b)(6), but does not apply to a standing challenge under Fed. R. Civ. P. 12(b)(1) which "presents a threshold challenge to the court's jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). Plaintiffs' affirmative pleading burden with regard to standing is set forth in FW/PBS v. City of Dallas, 493 U.S. 215, 231 (1990) as follows:

> It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is the proper party to invoke judicial resolution of the dispute. Thus, petitioners. . . must allege… facts essential to show jurisdiction. If [they] [f]ail to make the necessary allegations, [they have] no standing.

Id. at 231 (citations and internal quotations omitted, emphasis added). In Haase, the D.C. Circuit held that a plaintiff has an obligation to plead specific facts to satisfy the court that it has jurisdiction at the outset of the case. The Court stated:

> In 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on [sic] authority to entertain the case. . . . it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, <u>further particularized allegations of fact</u> deemed supportive of plaintiff's standing.  If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

<u>Haase</u>, 835 F.2d at 906 (internal quotations and emphasis omitted, emphasis added).  Despite the filing of two complaints and two declarations, Plaintiffs have failed to provide the necessary particularized allegations of facts to establish standing.

b.      Plaintiffs also incorrectly claim that "The Scope of Plaintiffs' Injuries and the Appropriate Remedy Do Not Bear on Their Standing" (Opp'n 26).  In <u>Lewis v. Casey</u>, 518 U.S. 343, 358 n.6 (1996), the Supreme Court stated:

> [S]tanding is not dispensed in gross.  If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review.  That is of course not the law.  As we have said, nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

<u>Id.</u> (internal quotations and emphasis omitted).  The D.C. Circuit has already explicitly rejected Plaintiffs' argument, having held that "<u>standing requirements vary depending on the nature of the relief sought</u>."  <u>Haase</u>, 835 F.2d at 910 (emphasis added).  The plaintiff in <u>Haase</u> sought not only damages for harm done to him by the U.S. Customs Service in connection with a luggage search, but also declaratory relief that the alleged search policy violated statutory law and the Constitution.  <u>Id.</u> at 903.  The D.C. Circuit stated that if the plaintiff had only been seeking damages for the harm done to him, he "surely would have standing."  <u>Id.</u> at 908.  However, because the plaintiff was seeking "sweeping" declaratory relief, the plaintiff had to allege specific facts to support his allegation of "a policy of intelligence-gathering border searches" to survive a motion to dismiss.  <u>Id.</u>  After an "exhaustive" analysis of very specific allegations about the alleged illegal policy, the Court concluded that the complaint allegations and

4

statements made in affidavits were "exceedingly weak." Id. at 908, 910.  The D.C. Circuit

instructed the district court to dismiss the case for lack of standing if the plaintiff could not plead

additional facts or if an evidentiary hearing on standing did not produce sufficient facts to

support standing.  Id. at 910.  Haase and Lewis make clear that the scope of Plaintiffs' injuries

and the scope of relief sought are highly relevant to the standing analysis.

      c.     Plaintiffs' legal standing analysis is also flawed in that they nowhere

acknowledge or apply the "imminent injury" requirement for injunctive relief.  Lujan v.

Defenders of Wildlife, 504 U.S. 555, 564 (1992).  In Lujan, the Supreme Court held that the

plaintiffs' claim of an "intent" to return to the places they had visited before "without any

description of concrete plans, or indeed even any specification of when the some day will be – do

not support a finding of the actual or imminent injury that our cases require."  Id. (internal

quotations and emphasis omitted, emphasis added).  The Court explained that lack of such

allegations made the prospect of injury "too speculative" for Article III purposes.  "[W]hen . . .

the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make

the injury happen are at least partly within the plaintiff's own control. . . [the Court has] insisted

that the injury proceed with a high degree of immediacy, so as to reduce the possibility of

deciding a case in which no injury would have occurred at all."  Id. at 564 n.2 (emphasis added).

See also Haase, 835 F.2d at 911 ("the threat of repetition [of harm] must be sufficiently real and

immediate")(internal quotations omitted); City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)

(requiring "real and immediate threat of injury"); Fair Employment Council of Greater

Washington, Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1273 (D.C. Cir. 1984) (for injunctive

relief, there must be allegations showing likely harm "in the reasonably near future").

      The "imminent" injury requirement does not disappear simply because an ADA violation

is alleged.  Plaintiffs' suggestion that "a person with disabilities is injured when he or she is

aware of accessibility barriers at a place of public accommodation and would visit the public

accommodation but for knowledge of those barriers" (Opp'n 19) is still subject to the "immediacy" requirement set forth in Lujan. Thus, a plaintiff must allege facts showing that he or she would visit the public accommodation in the reasonably near or imminent future but for his or her knowledge of the alleged barriers at that location.[2]

> **2.    Plaintiffs Have Not Alleged Sufficient Facts To Establish Their Standing To Seek Nationwide Injunctive Relief As To All Hilton Family Brand Hotels And The Central Reservations System.**

Despite ample opportunities for Plaintiffs to submit declarations to show standing to seek nationwide injunctive relief, there are still no allegations to support the conclusion that any plaintiff in this case will be harmed in the near future by alleged accessibility barriers at all 2,869 Hilton Family Brand hotels in the United States or the Hilton central reservation system.

a.    The reservation system.  No plaintiff other Ms. Elliott-Vandivier has ever even used the Hilton central reservation system, and there is no allegation that any plaintiff – not even Ms. Elliott-Vandivier – would use, or have occasion to use, the Hilton central reservation system in the near future.  All Ms. Vandivier can say is that she might someday have to use the

---

[2] See Holt v. Am. City Diner, Inc., No. CIV-05-1745, 2007 WL 1438489, at *6 (D.D.C. May 15, 2007); Harris v. Del Taco, Inc., 396 F. Supp. 2d 1107, 1124-25 (C.D. Cal. 2005); Molski v. Mandarin Touch Rest., 385 F. Supp. 2d 1042, 1045-46 (C.D. Cal. 2005).  With only a few exceptions, the cases cited by the plaintiffs are consistent with this principle because there were allegations or evidence that the plaintiff would visit likely visit the facility or facilities in question in the near future.  See Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04-6060, 2006 WL 3109966 (D.N.J. Oct. 30, 2006) (plaintiff had visited the property twice, enjoyed visiting the Atlantic City region, intended to return to inspect defendant's ADA compliance, and his mother lived nearby in Long Island New York);  Kratzer v. Gamma Mgmt. Group, No. Civ. A. 04-6031, 2005 WL 2644996, at *2 (E.D. Pa. Oct. 12, 2005) (all plaintiffs had alleged that they had visited the hotel in the past, and two plaintiffs submitted affidavits stating that the hotel was a desirable facility to hold future conferences because of its size and affordability); Celano v. Marriott Int'l, Inc., No. 05-4004, 2008 WL 239306, at *7 (N.D. Cal. Jan. 28, 2008) (plaintiffs had alleged that they had attempted to arrange tee times at "numerous" Marriott courses and could not play, and had "indicate[d] a sufficient interest to play on Marriott courses nationwide"); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1040 (9th Cir. 2008) (plaintiff had visited the store in question ten to twenty times before and the store was located next to his favorite fast food restaurant in Anaheim where he goes once a year to visit Disneyland).

reservation system <u>if</u> her employer decides to hold its quarterly meeting at a Hilton Family Brand hotel, but there is no allegation of when such a meeting would take place. The remote possibility that Ms. Elliott-Vandivier's employer might someday schedule a meeting at a Hilton Family Brand hotel, that Ms. Elliott-Vandivier will still be employed by this employer, and that she would then have to use the central Hilton reservation system at that time is simply too speculative to demonstrate the "imminent injury" that <u>Lujan</u> requires. <u>Lujan</u>, 504 U.S. at 564 and n.2.[3]

<u>Alleged accessibility barriers</u>. The individual plaintiffs do not have standing to seek injunctive relief at 2,869 Hilton Family Brand hotels across the country because there is no allegation or evidence in the record that these plaintiffs would visit all of these Hilton Family Brand hotels in the imminent future but for their actual knowledge of alleged accessibility barriers at all of these hotels. The only hotels that the individual plaintiffs claim they would like to visit in the future are the Hilton Oceanfront Hotel in South Carolina (Mr. Fiedler) and unspecified Hilton Family Brand hotels in Washington, D.C. (Mr. Johnson). Ms. Vandivier has not even alleged that she would like to stay, or intends to stay, at any particular Hilton Family Brand hotel in the future, or that she even knows of any accessibility barriers at any Hilton Family Brand hotels other than the Doubletree Guest Suites, Philadelphia West.

ERC and AAPD fare no better. Despite their submission of new declarations, these plaintiffs have not made any allegations or provided any evidence that alleged accessibility barriers at <u>all</u> 2,869 Hilton Family Brand hotels in the country will cause them to provide more

---

[3] Ms. Vandivier's argument that standing requirements should be relaxed because the ADA is a civil rights statute cannot be reconciled with the fact that the D.C. Circuit has not made any special exceptions to Article III and prudential standing requirements for other civil rights laws. <u>See</u> <u>BMC Mktg.</u>, 28 F.3d at 1273, 1281 (testers had no standing to sue for injunctive relief under Title VII because the possibility of future injury was remote and advocacy organization had no standing to sue under Section 1981).

counseling or increase their educational expenditures in the imminent future.  In fact, ERC's declaration states that it has only had to counsel two people about alleged accessibility issues at the Hilton Oceanfront Resort and unspecified Hampton Inn hotels.  AAPD has not alleged that it would like to host an event at any Hilton Family Brand hotel in the imminent future, so there is no basis to conclude that AAPD will suffer imminent harm as a result of supposedly inaccessible conditions at any Hilton Family Brand hotel.

Unable to make any allegations or marshal any evidence that they have been harmed by conditions at all or even a miniscule fraction of 2,869 Hilton Family Brand hotels[4] – Plaintiffs are reduced to arguing that they are entitled to a nationwide injunction because their alleged injuries have resulted from a "systemwide policy" of not dispersing accessible rooms and "widespread accessibility barriers" (Opp'n 28-29).  However, Plaintiffs have not made the specific factual allegations required by Haase to support the existence of such a policy.  Haase, 835 F.2d at 911 ("[M]ore than a nebulous assertion of the existence of a policy is required to establish standing.") (Internal quotations omitted).  If anything, Plaintiffs' allegations show that there is no such policy.  For example, the Amended Complaint alleges that "31% of Hilton hotels only offer ADA accessible rooms with one bed," which means that 69% of Hilton hotels do offer accessible rooms with two beds (Am. Compl. ¶ 27).[5]  The conclusory allegation of "widespread accessibility barriers" is insufficient to establish a nationwide policy where Plaintiffs have only actually identified alleged barriers at 26 (or less than 1%) of the 2,869 hotels, and there is no

---

[4] It is apparent that, in seeking nationwide injunctive relief, Plaintiffs are really trying to assert the legal rights and interests of third parties.  Prudential limitations on standing do not allow this. See Hilton Mem. 24-26 and cases cited therein.

[5] The Court also cannot assume that the alleged lack of accessible double rooms at 31% of Hilton Family Brand hotels is a violation of the ADA because compliance with the dispersion requirement is not required if the dispersion is structurally impracticable in new construction (42 U.S.C. § 12183(a)(1)), not feasible in alterations (42 U.S.C. § 12183(a)(2)), or not readily achievable (42 U.S.C. § 12182(b)(2)(A)(iv)).

alleged commonality of architecture among these hotels which were built and renovated at different times.[6]  See Clark v. Burger King, 255 F. Supp. 2d 334, 343 (D.N.J. 2003) (finding no standing for nationwide injunctive relief against Burger King when the plaintiff had not alleged facts showing a likelihood of future injury at restaurants across the country or a commonality of architecture among all Burger King restaurants); see also Second Raynor Decl. ¶ 6 (Ex.1).) Likewise, Plaintiffs' claim that Hilton has a "policy" of not ensuring that guests get the accessible rooms they reserve cannot be supported by the allegations about Ms. Elliott-Vandivier's one-time problem with her reservation which resulted from an unusual circumstance (i.e., a renovation).  If there is such a policy, Plaintiffs would surely have been able to identify more than a single person who had a problem.

In sum, the allegations and evidence in this case supporting the alleged "policy" of ADA non-compliance is significantly weaker than it was in Haase where the D.C. Circuit held that the plaintiff had not, at the outset of the case, demonstrated standing to seek sweeping nationwide relief.  Haase, 835 F.2d at 908-10.  In the absence of any evidence of a discriminatory policy or imminent injury to Plaintiffs caused by all 2,869 Hilton Family Brand hotels, Plaintiffs lack Article III standing to seek "sweeping" injunctive relief at 2,869 Hilton Family Brand hotels or the Hilton central reservation system.  Id. at 908.

### 3. The Individual Plaintiffs Have Not Alleged Facts To Establish Their Standing To Seek Injunctive Relief As To Any Individual Hilton Family Brand Hotels.

Mr. Fiedler's single-sentence allegation that he has a "continuing desire" to visit the Hilton Oceanfront Resort is insufficient to establish his standing to seek injunctive relief as to this hotel because it does not demonstrate that he would, but for his knowledge of the lack of

_____
    [6] For example, the Capital Hilton is the only Hilton Family Brand hotel that is alleged in the Amended Complaint to not have a roll-in shower.

accessible ocean view rooms, visit the hotel <u>in the imminent future</u>.  In <u>Lujan</u>, 504 U.S. at 555, 564; <u>Haase</u>, 835 F.2d at 911 (Plaintiff's allegation "that he might one day return to Nicaragua" and be subject to an allegedly illegal luggage search not enough to establish standing.  "More immediate and concrete plans are necessary").

Mr. Johnson claims that he has standing to seek injunctive relief for <u>all</u> Hilton Family Brand hotels in Washington, D.C. simply because he has encountered one alleged accessibility barrier -- the lack of roll-in shower rooms -- at the Capital Hilton, even though he has <u>no</u> knowledge of any other alleged barriers at other Hilton Family Brand hotels in Washington, D.C. (Opp'n 22).  This position conflicts with the well-established principle that a plaintiff only has standing to sue for injunctive relief with regard to buildings where he has knowledge of actual barriers.  <u>See</u> <u>Steger v. Franco</u>, 228 F.3d 889, 892 (8th Cir. 2000); <u>Small v. Gen. Nutrition Cos.</u>, 388 F. Supp. 2d 83, 88 (E.D.N.Y. 2005); <u>Ass'n for Disabled Ams. v. Claypool Holdings, LLC</u>, No. IP 00-0344-C-G/T, 2001 WL 1112109, at *19 (S.D. Ind. Aug. 6, 2001); <u>Doran</u>, 524 F.3d at 1041.  The cases cited by Mr. Johnson do not hold otherwise for they simply state that a plaintiff may sue for all accessibility barriers <u>within a single facility</u> even if he has only personally encountered some of them.  <u>See</u> <u>Doran</u>, 524 F.3d at 1034, 1038; <u>Indep. Living Res. v. Oregon Arena</u>, 982 F. Supp. 698, 761-62 (D. Or. 1997); <u>Gregory v. Melrose Group</u>, No. Civ. A 03-2414, 2003 WL 22928805, at *1 (E.D. La. Dec. 8, 2003).

Indeed, none of these cases hold that that a plaintiff can sue for accessibility barriers of which he has no knowledge at facilities that he has never visited.  For example, in <u>Celano</u>, 2008 WL 239304, at *6, the plaintiffs knew that there were no accessible golf carts at any of the golf courses at issue in that case because it was Marriott's nationwide policy to not provide such carts.  Likewise, in <u>Bacon v. City of Richmond</u>, 386 F. Supp. 2d 700, 703 (E.D. Va. 2005), plaintiffs had standing to sue for barriers at fifty-seven schools because they learned of the barriers at <u>all</u> of those schools from two official government reports about the schools'

accessibility.  Mr. Johnson, in contrast, has not alleged that he has knowledge about any

accessibility barriers located in any Washington, D.C. Hilton Family Brand hotels other than the

Capital Hilton.

Ms. Vandivier does not claim future imminent injury as a result of any inaccessible

conditions at the Doubletree Guest Suites, Philadelphia West.  Instead, she only claims that she is

likely to be injured again by the Hilton central reservation system (Opp'n 24-26) for which, as

discussed above at pp. 6-7, <u>supra</u>, she has no standing to seek injunctive relief.

### 4.    ERC Does Not Have Organizational Standing To Seek Injunctive Relief.

#### a.    ERC cannot avoid the prudential and statutory bar to its ADA claim.

Hilton's opening brief establishes that ERC cannot assert a claim under Title III because

the ADA only confers a cause of action upon "any person <u>who is being subjected to</u>

<u>discrimination</u> . . . or who has reasonable grounds for believing that such person is <u>about to be</u>

<u>subjected to discrimination</u>."  42 U.S.C. § 12188(a)(1) (emphasis added).  ERC does not even

attempt to argue that it has been or is about to be subjected to discrimination.  ERC also has not

cited to a single case in which a court has actually held that anyone (including organizations such

as ERC) who has not been subject to or is about to be subject to discrimination has standing to

sue under Title III.  As discussed at pp. 25-26 of Hilton's opening brief, every court to have

actually decided this question has concluded that such a suit cannot be maintained.[7]  ERC's

reliance on <u>Independent Living Resources</u> and <u>Equity Residential</u> is misplaced because the

courts in those cases did not decide the issue of prudential standing.  <u>See</u> <u>Indep. Living Res.</u>, 982

_____

[7]    <u>See</u> <u>Small</u>, 388 F. Supp. 2d at 83; <u>Clark v. McDonald's Corp.</u>, 213 F.R.D. 198, 210-11
(D.N.J. 2003); <u>McInnis-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 69 (1st Cir. 2003); <u>Hoepfl v.
Barlow</u>, 906 F. Supp. 317, 323 (E.D. Va. 1995); <u>Moreno v. G & M Oil Co.</u>, 88 F. Supp. 2d 1116,
1117 (C.D. Cal. 2000).

F. Supp. at 760-63;  Equal Rights Ctr. v. Equity Residential, 483 F. Supp. 2d 482, 487 n.7 (D. Md. 2007).

The cases cited by ERC decided under Title II of the ADA do not support its standing in this ADA Title III case because Title II contains much broader language about who can bring a lawsuit.  Title II grants a right of relief to "any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added).  Title II's language shows that Congress knew how to draft a broad right to relief provision to give organizations such as ERC a cause of action, but chose not to include such a provision in Title III of the ADA.

Finally, Plaintiffs' speculation that Congress intended to include organizations like ERC among those who could sue under Title III because it did not limit relief to "disabled" persons under Section 12188(a)(1) also lacks merit.  There is an obvious reason for why Congress did not modify the word "person" with the word "disabled":  The ADA also prohibits discrimination against people because of their relationship with a person with a disability.  See 42 U.S.C. § 12182(b)(1)(E).  Had Congress modified the word "person" with the word "disabled", non-disabled persons who have suffered associational discrimination would not be able to seek relief.[8]

> **b.    ERC's allegations of past injury to itself do not establish the likelihood of imminent future harm required for injunctive relief.**

As discussed at pp. 6-8 above, ERC has not alleged any facts that establish its standing to sue for injunctive relief at all 2,869 Hilton Family Brand hotels or the Hilton central reservation

---

[8] Like ERC, AAPD is not "a person who is being subjected to . . . or . . . is about to be subjected to discrimination" and its ADA Title III claim also must be dismissed on this basis.  42 U.S.C. § 12188(a)(1).

system.  As discussed below, ERC also has failed to allege facts to support its standing to sue for injunctive relief at any specific property.

ERC's entire discussion of the "injury in fact" requirement focuses on allegations of injuries that it has suffered in the past (ERC was forced "to divert resources from other issues vital to its membership in order to combat . . . discrimination" (Opp'n 10)).  This allegation is not sufficient to establish standing for injunctive relief, however, because the Court cannot conclude, based on this allegation, that ERC will have to divert its resources to combating discrimination by Hilton in the imminent future.  It is telling that ERC's Executive Director could only identify two people whom ERC has ever had to allegedly counsel about alleged discrimination at a Hilton Family Brand hotel and that the most recent of these two counseling sessions occurred in the Fall of 2006, more than a year and a half ago.  (Kahn Decl. ¶¶ 4-5.)  The very fact that ERC has not had to counsel anyone about accessibility barriers at a Hilton Family Brand hotel since the Fall of 2006 makes ERC's claim of future imminent injury all the more speculative.

ERC also claims that it teaches "know your rights classes" and "advocacy" and "education" workshops, but it has not alleged or provided any facts to show how these activities have been impaired in the past or will be impaired in the future by conditions at any Hilton Family Brand hotel.

ERC's reliance on Havens Realty v. Coleman, 455 U.S. 363 (1982), Spann v. Colonial Village, Inc., 899 F.2d 24 (D.C.Cir. 1990), and BMC Mktg., 28 F.3d at 1268, is misplaced because the courts in these cases did not conduct the standing analysis for injunctive relief – the only remedy available under ADA Title III.  See Havens, 455 U.S. at 370 (organization's claim was limited to damages under the Fair Housing Act); Spann, 899 F.2d at 29 (organization's claim was for declaratory, not injunctive relief); BMC Mktg., 28 F.3d at 1276 (claim asserted was under Title VII, which provides for damages).  Thus, ERC's parroting of the allegations of

past injury from these cases is irrelevant to the issue of standing for injunctive relief which requires facts showing a likelihood of imminent future injury.  See discussion, supra at 4-5.[9]

     **5.**    **AAPD Does Not Have Organizational Standing To Seek Injunctive Relief.**

AAPD alleges that Hilton's discrimination has made it more difficult for people to travel throughout the country and integrate themselves into society, thereby frustrating AAPD's purpose, making its activities more difficult, and causing AAPD to spend additional resources order to combat the discrimination at Hilton hotels.  (Opp'n 16-17).  The frustration of an organization's purpose, without more, is not a cognizable injury in fact.  See, e.g., Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1429 (D.C. Cir. 1996).  AAPD still has not alleged or provided any facts to support its conclusory claim that its activities have been made more difficult or that it has had to spend additional resources to combat the alleged discrimination.  AAPD also claims that it has had to engage in lobbying activities to combat the alleged discrimination, but has not cited to a single case to suggest that lobbying activities constitute an injury in fact in the face of two decisions from this district holding otherwise.  (See Hilton Mem. 33.)

AAPD's claim that Hilton's actions caused it to spend time finding accessible meeting facilities for specific events held in 2003 and 2008 also fails to establish standing for injunctive relief because there is no allegation that AAPD would hold any events at any Hilton Family Brand hotel in the near future but for its knowledge of accessibility barriers at such hotels.  The absence of this allegation also puts to rest AAPD's argument that its claim regarding the Rockville Hilton is not barred by the ADA statute of limitations because there is a continuing

---

    [9] These cases are also distinguishable because the plaintiffs there were not seeking nationwide injunctive relief.  As discussed at 4-5, the standing analysis is more rigorous when the scope of the injunctive relief sought is "sweeping."

violation.  Even assuming <u>arguendo</u> the alleged barriers caused harm to AAPD in 2003 when it wanted to hold a conference there, AAPD has not alleged that it would have held  another event there since.  Thus, there is no continuing adverse effect on AAPD whatsoever.

> 6.    **AAPD and ERC's Vague Allegations Do Not Establish Their Associational Standing to Represent the Interests of their Members.**

ERC and AAPD cannot base their associational standing on Mark Fiedler, Wendy Elliott-Vandivier, and Mark Johnson because, as discussed at pp. 6-10, <u>supra</u>, these individuals do not have standing to seek injunctive relief.  D.C. Circuit precedent does not support ERC and AAPD's claim that they can establish associational standing based solely on the allegation that their unnamed members have encountered unspecified ADA violations at unnamed Hilton Family Brand hotels at unspecified times, and that these unnamed members have a "continuing desire" to stay at unnamed Hilton Family Family Brand hotels in the future.  The D.C. Circuit recently stated as follows:

> "We hold . . . that an organization bringing a claim based on associational standing must show that at least one <u>specifically-identified member</u> has suffered an injury-in-fact.  It is not enough to show. . . that there is a substantial likelihood that at least one member may have suffered an injury-in-fact….  <u>At the very least, the identity of the party suffering an injury in fact must be firmly established</u>."

<u>Am. Chemistry Council v. Dep't of Transp.</u>, 468 F.3d 810, 820 (D.C. Cir. 2006) (emphasis omitted, emphasis added).  Like AAPD and ERC here, the organizational plaintiffs in <u>American Chemistry Council</u> had alleged that "numerous members" would be harmed by the regulation at issue.  In finding the plaintiffs' submissions inadequate to establish standing, the Court observed that the plaintiffs had ready access to information concerning their members and yet provided no additional information to support their standing.  <u>Id.</u> at 820.

The district courts in this circuit also have required advocacy organizations to identify specific members who have been injured to establish associational standing.  In <u>National Coalition for Students with Disabilities v. Miller</u>, 298 F. Supp. 2d 16, 20-21 (D.D.C. 2002), the

court granted a motion to dismiss because the plaintiff organization had "failed to identify . . . specific members with injuries." The court stated that the plaintiff should have had no difficulty identifying such members if they existed. Id. at 21. The court also held that the plaintiff had to allege "more specificity regarding injuries to at least one such member." Id. Likewise, in American Immigration Lawyers Association v. Reno, et al., 18 F. Supp. 2d 38, 51 (D.D.C. 1998), the organizational plaintiffs alleged that their members had been harmed, without identifying any particular members. Holding that the plaintiffs' obligation "extends to identifying the member or members of plaintiff organizations that have, or will suffer, harm," the court granted the motion to dismiss the organizational plaintiffs because they had failed to "identify one injured person by name, allege the injured person is a member of one of the plaintiff organizations, . . . or allege facts sufficient to establish the harm to that member." Id. (emphasis omitted).

The foregoing discussion makes clear that the D.C. Circuit's pleading requirements for associational standing are entirely consistent with the ADA decisions from other circuits that Hilton cited in its opening brief at 34-36. These cases all hold that an organization cannot just claim that its members have been harmed, without providing specifics, to establish associational standing for an ADA claim.

The cases cited by Plaintiffs presented unique circumstances that are not present in this case. In Public Citizen v. FTC, 869 F.2d 1541 (D.C. Cir. 1989), the court was able to satisfy itself with "reasonable certainty" that one or more of plaintiff's members would be harmed based on the plaintiff's three-million person membership, the near impossibility of identifying members who have been injured, and the one obvious source of the alleged injury. Id. at 1551-52. Likewise, in Natural Resources Defense Council v. EPA, 464 F.3d 1, 6 (D.C. Cir. 2006) the identification of injured members was impossible because the injury consisted of "increased health risks" resulting from the challenged EPA rule. Nonetheless, the Court was able to

16

conclude that there was a "substantial probability" of injury based on scientific expert testimony that two to four of the organization's nearly <u>half million members</u> would develop cancer a result of the rule. <u>Id.</u> at 6-7.[10]

        None of the unique circumstances present in <u>Public Citizen</u> or <u>National Resources Defense Council</u> exists in ERC or AAPD's case. First, AAPD only has 100,000 members (versus Public Citizen's three million members and National Resource Council's half million members) and ERC has remained conspicuously silent about how many members it represents. Second, the identity of injured parties, if they exist, could easily be obtained by ERC and AAPD but they have provided no information. Third, whereas the source of the harm was clear in <u>Public Citizen</u> and <u>National Resource Council</u> (<u>i.e.</u>, the challenged rules), it is impossible for the Court to conclude with reasonable certainty which of the 2,869 architecturally distinct Hilton Family Brand hotels in the country have alleged accessibility barriers that are likely to harm any of the unidentified AAPD and ERC members in the near future.

        **B.    Plaintiffs Do Not Have Standing To Sue for Damages Under the DCHRA.**

        As explained in Hilton's opening brief, an essential element of an "injury in fact" is "an invasion of a legally protected interest." <u>Lujan</u>, 504 U.S. at 560. In order for the Court to conclude that ERC's and Mr. Fiedler's legal rights under the DCHRA have been violated, the Court would first have to conclude that the DCHRA regulates the physical accessibility of a hotel that is located wholly outside its borders, because neither Plaintiff has alleged an injury

---

[10]    <u>National Taxpayers Union v. United States</u>, 68 F.3d 1428 (D.C. Cir. 1995), does not support to ERC and AAPD's representational standing claim because the plaintiff there, while not providing the name of the member who would be injured, provided other specific information that made it clear that the member's estate would be subject to the challenged tax regulation.

resulting from inaccessible conditions at a D.C. hotel.  The Supreme Court's decision in <u>Healy v. Beer Institute, Inc.</u>, 491 U.S. 324, 336 (1989) prohibits this interpretation.  The Court stated that

> the *Commerce Clause* precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State. . . .  [A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.  <u>The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State. . . . [T]</u>he *Commerce Clause* <u>protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State.</u>

<u>Id.</u> (internal quotations omitted, emphasis added, italics in original).  Adopting Mr. Fiedler and ERC's position that a hotel becomes subject to the accessibility laws of a state (in this case, Washington, D.C.) in which it is not located simply because a prospective guest lives in that state and/or places a call to the hotel from that state, or because an entity in that state expends resources in that state as a result of complaints about the hotel, means that every hotel in the country could be sued under the different accessibility laws of all fifty states.  (Virtually all hotels have websites and toll-free numbers, and they receive inquiries from guests all over the United States who could claim they were injured in their home state.)  This situation would result in every hotel being subject to conflicting out-of-state accessibility laws -- precisely the type of scenario that the Commerce Clause prohibits.

   The cases cited by ERC and Mr. Fiedler do not support their overreaching interpretation of the DCHRA's scope and are wholly consistent with <u>Healy</u>.  In each one of those cases, one or more <u>discriminatory acts</u> – not just the injuries allegedly sustained from those acts – took place in D.C.  In <u>Liban v. Churchey Group II, L.L.C.</u>, 305 F. Supp. 2d 136, 139 (D.D.C. 2004), the defendant had published a discriminatory ad in Washington, D.C.  Under the DCHRA, the act of publishing such an ad is itself an act of discrimination.   <u>See</u> D.C. Code § 2-1402.21(5).   In both <u>Blake v. Professional Travel Corp.</u>, 768 A.2d 568, 569 (D.C. 2001) and <u>Matthews v. Automated Business Systems & Services, Inc.</u>, 558 A.2d 1175, 1180 (D.C. 1989), the plaintiffs alleged that

many of the acts of sex discrimination occurred while both parties were physically present in Washington, D.C.

In Mr. Fiedler's and ERC's case, the alleged discriminatory acts consist of an alleged failure to provide accessible rooms with ocean views and a failure to provide accessible hotel facilities. The failure to provide accessible ocean view rooms took place in South Carolina where the Hilton Oceanfront Hotel is located. The telephonic communication of the fact that the hotel does not have such rooms with ocean views to Mr. Fiedler while he is in D.C. does not violate the DCHRA because the communication is not itself a discriminatory act. With regard to ERC, the claimed injury (counseling about the Hilton Oceanfront Hotel and unspecified Hampton Inns) was allegedly caused by inaccessible hotel conditions that exist outside of Washington, D.C. Thus, no discriminatory act injuring ERC took place in D.C. Under these circumstances, the Court cannot conclude that ERC and Mr. Fiedler's rights under the DCHRA have been violated.[11]

### C.    The Managed and Franchised Hotel Owners Are Necessary and Indispensable Parties under Fed. R. Civ. P. 19(a).

Plaintiffs mistakenly claim that the owners of the Managed and Franchised Hotels are not necessary parties because they are "joint tortfeasors" not subject to Rule 19 (Opp'n 36). Plaintiffs have not cited to a single ADA Title III case with such a holding. Hilton, on the other hand, has cited two cases in which the courts dismissed or excluded claims against public accommodations where the plaintiffs had not joined the owners of the public accommodations in the lawsuit. See Thompson v. Sand Cliff Owners Ass'n, Inc., No. 3:96 CV 270/RV, 1998 WL 35177067, at *2 (N.D. Fla. Mar. 30, 1998) (the court had dismissed the original ADA Title III

---

[11] Ms. Elliott-Vandivier does not dispute Hilton's position that she lacks standing under the DCHRA (Opp'n 34-35). The reasons why AAPD and Mr. Johnson lack standing to bring an action for damages under the DCHRA are set forth at page 37 of Hilton's opening brief.

complaint seeking changes to individual condominium units because the owners of such units had not been joined in the action); <u>Clark</u>, 213 F.R.D. at 230 (excluding from ADA Title III lawsuit brought against Burger King restaurants owned or operated by franchisees in the absence of their joinder as defendants).

Plaintiffs' inability to cite to a single court decision embracing their position is not surprising because a court's grant of injunctive relief in an ADA Title III case can cause significant injury to the absent owner unless he is joined as a party.   As discussed, the injunctive relief sought would result in permanent physical changes to the Managed Hotel properties owned by the non-parties, the expense of such retrofits, and, <u>inter</u> <u>alia</u>, a potential permanent decrease in revenues if the room count were to be decreased to create accessible rooms in all room classes. In the case of Franchised Hotels, injunctive relief would result in the Franchised Hotel owners having to choose between losing their valuable franchise agreements or making permanent and expensive physical changes to their properties that may also decrease their room count and associated revenues.  This situation is completely different from the typical joint tortfeasor situation where a judgment against one joint tortfeasor would not have any direct impact on the absent tortfeasor other than a potential contribution action.

Plaintiffs' joint tortfeasor theory also does not impact the application of Rule 19 to the owners of the Franchised Hotels because, contrary to Plaintiffs' claim, Hilton does not "operate" these hotels and cannot be considered a joint tortfeasor.  While Hilton reserves the right to move for summary judgment on the question of whether Hilton is an operator of the Franchised Hotel after the Court rules on this motion, Plaintiffs' joint tortfeasor theory must be rejected at this time because there are no factual allegations in the record to support the conclusion that Hilton is an operator of any Franchised Hotels.

Although the D.C. Circuit has not addressed this issue, other courts, including the Fifth and Eighth Circuits, have held that the analysis for determining whether a franchisor is an

operator of a franchised establishment for purposes of ADA liability is whether the franchisor

has control over structural modifications at the franchisee's establishment that relate to their

accessibility to the disabled.  See Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir.

1995) (holding that "the relevant inquiry . . . is whether [the franchisor] specifically controls the

modification of the franchises to improve their accessibility to the disabled" and noting that three

other courts "looked to [the franchisor's] authority over structural modifications to the franchisee

stores in reaching their conclusions"); United States v. Days Inns, 151 F.3d 822, 826 nn.3 & 4

(8th Cir. 1988) (franchisor was not an operator even though the franchise agreement "provided

[the franchisor] with a significant amount of authority (power to terminate franchise) which

would have enabled DIA to ensure ADA compliance."); United States v. Days Inns, 22 F. Supp.

2d 612, 616 (E.D. Ky. 1998) (franchisor not an operator because the franchisor must in some

way actually cause the franchisee to comply or not comply with the ADA.); Young v. Am. Dairy

Queen Corp., 1994 WL 761233 (N.D. Tex. 1994) (franchisor did not "operate" the franchise

simply because it retained approval authority over the construction, modification, and

maintenance of the facilities); Dahlberg v. Avis Rent a Car Sys., 92 F. Supp. 2d 1091, 1102-03

(D. Colo. 2000) (franchisor did not operate the franchised rental car business under the ADA

because the franchise agreement "did not give [the franchisor] . . . the power to direct operations

as pertains to the allegedly discriminatory conditions.").

        The Amended Complaint contains no allegation that Hilton has control over structural

modifications at the Franchised Hotels for any purpose, let alone for accessibility purposes.

Plaintiffs' general allegations that Hilton exerts general "significant control" over its hotels to

ensure that the franchisees are complying with its brand standards (e.g., alarm clocks and

bedding) or to make "specific changes" (Am. Compl. ¶¶ 2, 30) are insufficient to transform

Hilton into an "operator" under the ADA.  Similarly, the courts in all of the cases set forth above

have held that the right to review and approve construction plans does not transform a franchisor

into an "operator" of a franchised facility for ADA purposes.  See Neff, 58 F.3d  at 1067; Young, 1994 WL 761233, at *2; Days Inns, 151 F.3d at 826 n.4;  Days Inns, 22 F. Supp. 2d at 616.[12]

Plaintiffs also contend that complete relief can be ordered by the Court without the absent Franchised Hotel owners because "Hilton implements quality control programs and regularly inspects hotels to ensure that they will comply with Hilton's standards" (Opp'n 37-38).  Hilton may inspect Franchised Hotels and require them to meet certain standards, but Plaintiffs cannot dispute that Hilton has no right to make changes at these hotels.  (Second Raynor Decl. ¶ 4 (Ex. 1); see Form Franchise Agreement ("FFA") (Ex. 1 (B)).)  The franchise license agreements makes clear that Hilton's subsidiaries can only request that the changes be made on the threat of terminating the Franchise Agreement.  Id.  Plaintiffs' speculation that a franchisor will comply with such a request, without more, is not sufficient to conclude that the Court can order complete relief in the absence of the Franchised Hotel owners.[13]

Plaintiffs' claim that Hilton will adequately protect the absent owners' interest in the outcome of the suit because it bears financial responsibility for ensuring ADA compliance at the hotels that it owns makes no sense.  The fact that Hilton will have an incentive zealously to defend the unique conditions at the properties that it owns has no bearing on how or even whether it would seek to defend the Franchised Hotels, as it has no obligation to the owners of such hotels to conduct such a defense.  See FFA ¶ 15(a).

In arguing that this case should be allowed to proceed, Plaintiffs claim that they would not have an adequate alternative forum because "[d]ismissing the suit would most likely require

---

[12] The only case to have held that a franchisor could have liability under the ADA for accessibility barriers at a franchised hotel is United States v. Days Inns, 997 F. Supp. 1080 (C.D. Ill. 1998).  However, the court's analysis was focused primarily on the franchisor's significant "supervisory" role over the construction of the hotel.  Id. at 1085.

[13] The Court's inability to grant a complete relief in the case of Franchised Hotels also establishes that Plaintiffs lack standing because their alleged injuries are not redressable.

the Plaintiffs to litigate in all 50 states" Hilton's alleged "pattern of discrimination" (Opp'n 40-41). First, as discussed at pp. 8-9, supra, Plaintiffs' alleged facts do now show any pattern of discrimination. Second, a plaintiff's convenience has never been a factor in deciding whether there is an adequate alternative forum under Rule 19. The bottom line is that Plaintiffs can seek relief in the judicial district in which the owners of such hotels are located, or where the hotels are located. There is no risk of inconsistent judgments because each case will – as it should – address conditions unique to a particular hotel.

Plaintiffs also claim that the Franchised Hotel and Managed Hotel Owners "may" be subject to this court's jurisdiction because "Hilton's website also allows customers to transact business with Hilton." (Opp'n 39.) However, the issue is not whether the Court has jurisdiction over Hilton – the owner and operator of the website – but whether the Court has jurisdiction over the absent Franchised and Managed Hotel owners. There is no allegation, nor could there be, that these entities own or operate the Hilton website, so jurisdiction cannot be based on the website.

### D. The ADA Does Not Require Hotels Constructed for First Occupancy Before January 26, 1993 To Disperse Accessible Rooms.

As explained in Hilton's opening brief, the requirement to disperse accessible rooms across various classes of rooms is found in ADAAG § 9.1.4. See 28 C.F.R. Part 36, App. A § 9.1.5. Section 9.1.5 (entitled "Alterations to Accessible Units, Sleeping Rooms, and Suites") specifically addresses the situation of "[w]hen sleeping rooms are being altered in an existing facility." It does not reference Section 9.1.4, but only requires that accessible rooms be created in conformance with Section 9.2 which has no dispersion requirement. The text of Section 9.1.5 states in relevant part:

> **9.1.5. Alterations to Accessible Units, Sleeping Rooms, and Suites.** When sleeping rooms are being altered in an existing facility, or portion thereof, subject to the requirements of this section, at least one sleeping room or suite that complies with the requirements of 9.2 (Requirements for Accessible Units, Sleeping Rooms, and Suites)

23

shall be provided for each 25 sleeping rooms, or fraction thereof, of rooms being altered until the number of such rooms provided equals the number required to be accessible with 9.1.2.

Without citing to a single case or other authority, Plaintiffs claim that the phrase "subject to the requirements of this section" in § 9.1.5 means that the accessible rooms created through alterations must comply with <u>all</u> the requirements of § 9, including § 9.1.4.  However, Plaintiff's proposed interpretation conflicts the requirement in the same sentence that such rooms comply "with the requirements of 9.2" and makes it surplusage.  If § 9.1.5 was meant to encompass <u>all</u> the requirements of Section 9, there would have been no need to reference § 9.2 at all.

Plaintiffs also attempt to bootstrap § 9.1.4's dispersion requirement into § 9.2 by citing to § 9.2.1 which states:  "**9.2.1 General.**  Units, sleeping rooms, and suites required to be accessible by 9.1 shall comply with 9.2."  Plaintiffs claim that by mentioning § 9.1, the ADAAG incorporates within § 9.2 all of the requirements of § 9.1, including § 9.1.4.  This interpretation makes no sense because § 9.1 contains requirements that have nothing to do with sleeping rooms, such as the requirement for public use and common use areas in Section 9.1.1.  The phrase "required to be accessible by 9.1" is merely a tool to identify which units, sleeping rooms, and suites are being addressed in 9.2, not an attempt to incorporate by reference all of the requirements of Section 9.1 into section 9.2.  Plaintiffs' bootstrapping effort also conflicts with its theory that § 9.1.5 incorporates all of § 9.  If that were the case, § 9.2 would not need to incorporate all the requirements of § 9.1.

Plaintiffs also cannot reconcile their argument that pre-1993 Facilities must disperse accessible rooms created through the alterations process with DOJ's pronouncement that the requirements for new hotels versus altered pre-1993 hotels are not the same.  <u>See</u> DOJ Technical Assistance Manual § **III-7.7000 Alterations (ADAAG § 4.1.6)**.  ("There are special less stringent requirements for alterations in many other areas, including . . .hotels (§ 9.1.5). . . .)  If dispersion were also required in altered pre-1993 Facilities, there would be no difference

24

between the requirements such facilities and new facilities.  Finally, Plaintiffs' argument that

Hilton was required to disperse its accessible rooms under the readily achievable barrier removal

requirement has no merit because the regulations state that the barrier removal obligation can

never exceed the standards for alterations.  <u>See</u> 28 C.F.R. § 36.304(g).

## III.    CONCLUSION

For the reasons set forth in above and Hilton's opening brief, Plaintiffs' claims should be

dismissed in their entirety for lack of standing under Fed. R. Civ. P. 12(b)(1), failure to state a

claim under Fed. R. Civ. P. 12(b)(6), and failure to join an indispensable party under Fed. R. Civ.

P. 12(b)(7).

Dated:  June 25, 2008

BURCH, PORTER & JOHNSON, PLLC
Lisa A. Krupicka (admitted pro hac vice)
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)
Memphis, Tennessee 38103

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

____/s/  Minh N. Vu_____
Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)

Counsel for Defendant
Hilton Hotels Corporation

<u>CERTIFICATE OF SERVICE</u>

We hereby certify that the foregoing Memorandum of Points and Authorities in Support of Hilton Hotels Corporation's Motion to Dismiss the Amended Complaint was served electronically this 25th day of June 2008 to Plaintiffs' counsel:

> Elaine Gardner, Esq.
> Washington Lawyers' Committee for
> Civil Rights & Urban Affairs
> 11 Dupont Circle, NW, Suite 400
> Washington, D.C.  20036
>
> Benjamin Davidson, Esq.
> August J. Matteis, Jr., Esq.
> Gilbert Randolph LLP
> 1100 New York Ave., NW, Suite 700
> Washington, D.C. 20005

> _____/s/ Minh N. Vu_____
> Minh N. Vu
> D.C. Bar No. 444305

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EQUAL RIGHTS CENTER, et al.,

                  Plaintiffs,

      *v.*

HILTON HOTELS CORPORATION,

                Defendant.

Civ. Action No. 1:07-cv-01528-JR

**HILTON HOTELS CORPORATION'S SUPPLEMENTAL INDEX OF EXHIBITS
FILED IN SUPPORT OF ITS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS THE AMENDED COMPLAINT**

Frank C. Morris, Jr. (Bar No. 211482)
Minh N. Vu (Bar No. 444305)
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Suite 700
Washington, D.C. 20037
(202) 861-0900
(202) 296-2882 (fax)

Lisa A. Krupicka (admitted pro hac vice)
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, Tennessee 38103
(901) 524-5121
(901) 524-5024 (fax)

DATED:  June 25, 2008            Counsel for Defendant

## SUPPLEMENTAL INDEX OF EXHIBITS

| EXHIBIT DESCRIPTION | EXHIBIT NUMBER |
|---|---|
| | |
| Unpublished decision | 15 |
| • Young v. American Dairy Queen Corp., Civ. A. No. 5:93-CV-253-C, 1994 WL 761233 (N.D. Tex. May 11, 1994) | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of Exhibit 15 and the Supplemental Exhibit Index were served this 25th day of June 2008, by electronic service, on the following:

> Elaine E. Gardner, Esq.
> Washington Lawyers' Committee for
> Civil Rights & Urban Affairs
> 11 Dupont Circle, NW, Suite 400
> Washington, D.C.  20036
>
> August Matteis, Jr.
> Benjamin Davidson
> Gilbert Randolph LLP
> 1100 New York Avenue, NW
> Suite 700
> Washington, DC 20005
>
>
> Attorneys for Plaintiffs

                              /s/    Minh N. Vu
_____
Minh N. Vu
D.C. Bar No. 444305

**Hilton Exhibit 15**

Westlaw.

Not Reported in F.Supp.                                                        Page 1
Not Reported in F.Supp., 1994 WL 761233 (N.D.Tex.), 7 A.D.D. 634, 6 NDLR P 102
**(Cite as: Not Reported in F.Supp., 1994 WL 761233 (N.D.Tex.))**

**H**Young v. American Dairy Queen Corp.
N.D.Tex.,1994.

United States District Court, N.D. Texas, Lubbock
Division.
Evelynn L. YOUNG, for Herself and Those Similarly
Situated, Plaintiff,
v.
AMERICAN DAIRY QUEEN CORPORATION,
Defendant.
**Civ. A. No. 5:93-CV-253-C.**

May 11, 1994.
Order Denying Reconsideration June 22, 1994.

James C. Harrington, Advocacy, Inc., Austin, TX,
Stephon Dewyne Breedlove, Advocacy, Inc.,
Lubbock, TX, for plaintiff.
Joe Howard Nagy, Crenshaw, Dupree & Milam,
Lubbock, TX, William Lowell Killion, Gray, Plant,
Mooty, Mooty & Bennett, Minneapolis, MN, for
defendant.

*ORDER*

CUMMINGS, District Judge.
**\*1** The above-styled and -numbered action is before
the Court on Defendant's Motion for Summary
Judgment, filed on April 14, 1994. The Court has
carefully considered the motion, brief in support,
exhibits, affidavits, and other matters of record.

This action alleges a violation of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et
seq.,* by American Dairy Queen Corporation
("ADQ") for failing to remove architectural barriers
which prevent disabled persons from accessing the
Dairy Queen store located at 1311 College Street,
Levelland, Texas. A person is subject to the ADA if
it "owns, leases (or leases to), or operates a place of
public accommodation." 42 U.S.C. § 12182(a). The
uncontroverted record before the Court indicates that
the owner and operator of the Levelland store is
Dairy Queen of West Texas, Inc. Because ADQ is
not the owner, operator, lessee, or lessor of the
Levelland Dairy Queen store, it is not subject to

liability in this action.

Based on the foregoing, the Court is of the opinion
that summary judgment should be GRANTED in
favor of ADQ.

SO ORDERED.

*ORDER ON RECONSIDERATION*

CUMMINGS, District Judge.
The above-styled and -numbered action is before the
Court on Plaintiffs' Motion for Reconsideration, filed
on May 23, 1994. The Court has carefully considered
the motion, brief in support, response, affidavits,
exhibits, and other matters of record.

Plaintiff moves for "rehearing" of the motion for
summary judgment. A motion for rehearing is not
specifically contemplated by the Federal Rules of
Civil Procedure. *See Lavespere v. Niagara Machine
& Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990).
Since judgment has been entered, and because this
motion was filed more than ten days after judgment,
this motion should be treated as a Rule 60(b) motion
for relief from judgment. Plaintiff gives the following
as her reason for obtaining relief:

Plaintiff and Plaintiff's attorney, Stephon Breedlove,
respectfully petition the Court to forgive Mr.
Breedlove's failure to file the answer and brief within
the 20 day local rule requirement. Due to his reliance
on Rule 56, Fed.R.Civ.P., and not local rules,
Plaintiff's attorney, Stephon Breedlove, had a
reasonable belief that the time period was similar to
the time period given defendants for answering
citations when defendants are served with an original
petition. In view of the fact that the Plaintiff's
attorney did present to the Court an answer and brief
immediately after he became aware of his mistake,
Plaintiff and Plaintiff's attorney appeal to the Court's
leniency and the Court's desire to justly determine a
legal issue.

The main point of dispute in Defendant's motion for
summary judgment is whether Defendant American
Dairy Queen, Inc., has such ownership or control of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1994 WL 761233 (N.D.Tex.), 7 A.D.D. 634, 6 NDLR P 102
**(Cite as: Not Reported in F.Supp., 1994 WL 761233 (N.D.Tex.))**

the Dairy Queen restaurant located at 1311 College Street, Levelland, Texas, that it is subject to Americans with Disabilities Act accessibility requirements and to enforcing those requirements at that location. Plaintiff's brief, which accompanies this motion, Plaintiff [sic] presents uncontrovertible evidence that American Dairy Queen, Inc., has such joint ownership and control of the Dairy Queen restaurant in Levelland.

**\*2** Plaintiff's grounds for seeking relief from judgment are not meritorious. First, failure to comply with the rules is not a mistake warranting relief from judgment. *See Lavespere,* 910 F.2d 167. Second, Plaintiff and Plaintiff's attorney could not hold a reasonable belief regarding the time to respond for at least two reasons: 1) a belief is not reasonably held without first gathering information, i.e. reading the rule; and 2) the time period on which Plaintiff's attorney claims to rely, the time to answer, is the same 20 day period as set out in Local Rule 5.1(e). Federal Rule of Civil Procedure 12(a)(1)(A) states that an answer shall be filed "within 20 days after being served with the summons and complaint." Thus, under Plaintiff's belief or under Local Rule 5.1(e), the time to respond is 20 days. Defendant's Motion for Summary Judgment was filed on April 14, 1994, therefore making the response due date May 4, 1994. Summary judgment was entered on May 11, 1994, one week after the response due date. Plaintiff did not file this motion until May 23, 1994, or 39 days after the filing of the motion, and 12 days after entry of judgment.

As to the non-procedural grounds upon which Plaintiff relies, Plaintiff seeks to establish that Defendant is exerting such control over its franchisee so as to be operating the restaurant. Plaintiff cites portions of the franchise agreement relating to construction, modification, and maintenance of the facilities which require prior written consent of the franchisor before performing such acts. Notwithstanding, the ADA requires that the person liable either "own, lease (or lease to), or operate" the facility in question. Retaining architectural control cannot be tantamount to operating a facility which one does not own or lease. Plaintiff also cites a statewide marketing strategy as indicia of operation. Marketing support to a franchisee cannot equal operation. Indeed, the essence of a franchise agreement is the franchisor granting a license to operate a business under the franchisor's name.

The record before the Court remains uncontroverted that Dairy Queen of West Texas, Inc., owns and operates the Levelland store, and that American Dairy Queen, Inc. does not. Finding that American Dairy Queen, Inc. does not own, lease (or lease to), or operate the Levelland Dairy Queen, it cannot be subject to liability under the ADA.

Based on the foregoing, the Court is of the opinion that Plaintiff's Motion for Reconsideration should be DENIED.

SO ORDERED.

N.D.Tex.,1994.
Young v. American Dairy Queen Corp.
Not Reported in F.Supp., 1994 WL 761233 (N.D.Tex.), 7 A.D.D. 634, 6 NDLR P 102

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.